FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                :     Chapter 13

In re:                             : 

                               :     Case No. 06-35230 (cgm)

        BALDASSARRE PINTI         :
        *a/k/a Buddy Pinti*,           :

                               :

                     Debtor.   : 

                               :
-----------------------------------------------------------X

## MEMORANDUM DECISION ON OBJECTION TO CONFIRMATION

**A P P E A R A N C E S :**

Andrea B. Malin, Esq.
GENOVA & MALIN
1136 Route 9
Wappingers Falls, New York
*Attorneys for the Debtor*

Martin A. Mooney, Esq.
DEILY, MOONEY & GLASTETTER, LLP
8 Thurlow Terrace
Albany, New York
*Attorneys for Ford Motor Credit Company*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

     The Court is asked to interpret the "Hanging Paragraph" added by the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8; nominalized as "BAPCPA") to

11 U.S.C. § 1325(a)(5). One function of the Hanging Paragraph is to prevent "bifurcation" or

"stripping" of certain undersecured creditors' claims (usually where the collateral consists of

automobiles newer than 2 ½ years old) into secured and unsecured portions when the debtor

elects to retain the collateral as part of a Chapter 13 plan. The specific question before the Court

is whether the Hanging Paragraph also applies where the debtor's Chapter 13 plan opts to

surrender the collateral, preventing the creditor from asserting an unsecured claim for any

deficiency. Put another way, does the Hanging Paragraph permit a debtor to surrender collateral

in full satisfaction of the claim as part of a Chapter 13 plan? <u>This Court finds that it does.</u>

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §

157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated

July 10, 1984. The allowance or disallowance of claims and the confirmation of a plan of

reorganization are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (L), respectively.

## BACKGROUND

On March 24, 2006, Baldassarre Pinti (hereafter the "<u>Debtor</u>") filed a voluntary petition

for Chapter 13 bankruptcy. Schedule B of Debtor's petition lists a 2004 Ford F250 (the

"<u>Vehicle</u>"), which the Debtor values at $10,400. The Vehicle was purchased by the Debtor

pursuant to a retail installment contract on July 26, 2004.[1] The original purchase price was

$30,217.83, which Debtor agreed to repay in 71 monthly payments of $613.44. In Schedule D,

the Debtor lists Ford Motor Credit Company (hereafter, "<u>Ford</u>") as a secured creditor, with a

claim of $28,000 secured by the Vehicle.[2]

On April 4, 2006 Ford filed a proof of claim (the "<u>First Proof of Claim</u>") for $26,763.85,

including post-petition payment arrears of $1,181.61. In box number 5 of the First Proof of

---

[1]     The original seller was Monroe Motors, Inc. d/b/a Monroe Ford. The retail installment contract was later
assigned to Ford Motor Credit Company.

[2]     Schedule D of the original petition indicates that a total of $308,000, including the entirety of the lien on
this vehicle, a separate vehicle loan, and the majority of the first mortgage is unsecured "based upon existence of
Superior Liens." Only the $12,000 Home Equity Loan belonging to secured creditor HSBC is not so designated.
The "Superior Liens" are never identified or scheduled, and the Debtor does not raise this argument as a ground for
expunging Ford's claim.

Claim, Ford indicated that these amounts were secured and noted the following in the space in box 5 reserved for "Creditor Remarks": "910 CLAIM –NO CRAMDOWN PER STATUE [sic] FMCC requests interest at the APR of 13.24%."

On July 27, 2006, Ford filed a motion seeking relief from the stay pursuant to 11 U.S.C. § 362(d) (ECF Docket No. 17; hereafter, the "Lift-Stay Motion") so that it could repossess and sell the Vehicle, which Ford assessed at a wholesale value of $20,300. As of the date of the Lift-Stay Motion, the Debtor had failed to make installment payments on the vehicle and was in arrears pre-petition for February and March 2006 and post-petition for April through July 2006. In the Lift-Stay Motion, Ford stated that the "net balance due" was $26,763.85, the same amount indicated in the First Proof of Claim. The Debtor did not oppose the Lift-Stay Motion, and this Court granted Ford relief from the automatic stay by order dated August 17, 2006. Thereafter, Ford seized the Vehicle and sold it for less than the "net balance due."

By motion dated August 23, 2006, but filed on September 27, 2006 the Debtor moved to expunge Ford's claim as fully satisfied by sale of the Vehicle (ECF Docket Nos. 27 and 34; hereafter, the "Motion to Expunge"). Thus, in the Motion to Expunge, the Debtor characterized the post-petition seizure of the Vehicle as a "surrender" by the Debtor that was in full satisfaction of the amount owed on the Vehicle. Ford opposed the Motion to Expunge (ECF Docket No. 28 and 35), noting that the Debtor's original Chapter 13 plan did not provide for surrender of the Vehicle to fully satisfy the debt, and that such a provision would have been objectionable in any event. Ford also requested that after liquidation of the Vehicle, any shortfall be allowed as an unsecured claim.

The Vehicle ultimately sold for $16,700. On December 7, 2006 Ford filed an amended proof of claim (the "Amended Proof of Claim"), an unsecured, nonpriority claim for $10,898, reflecting the shortfall on the "net balance due" after sale of the Vehicle.[3]

The parties appeared before this Court on the Motion to Expunge on December 12, 2006. At the December 12, 2006 hearing, the Court observed that the dispute over Ford's proof of claim required consideration of confirmation issues, and the plan was not yet ready for confirmation. On December 15, 2006 the Debtor filed an amended plan (ECF Docket No. 36) that proposed to surrender the Vehicle "in full satisfaction of [Ford's claim] pursuant to 11 U.S.C. §506 and 11 U.S.C. § 1325." Ford objected to confirmation of the amended plan (ECF Docket Nos. 37 and 40), and the Debtor filed "Opposition" to Ford's objection to the plan (ECF Docket Nos. 41 and 42).

## DISCUSSION

### I.    Statutory Provisions

11 U.S.C. § 1325(a) sets forth the nine conditions that must be satisfied in order for the Court to confirm a plan under Chapter 13 of the Bankruptcy Code.[4] Creditors are entitled to

---

[3] The proof of claim does not explain how this figure was reached. For the shortfall to total $10,898, the net balance due would be $27,598 and not $26,763.85 as Ford claimed earlier. It is likely that Ford added late charges, attorneys' fees and the cost of sale to the net balance due.

[4] The full text of Section 1325(a) states:
(a) Except as provided in subsection (b), the court shall confirm a plan if--
   (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
   (5) with respect to each allowed secured claim provided for by the plan –
      (A) the holder of such claim has accepted the plan;

- 4 -

certain treatment under the plan, depending on the status of each creditor's claim as either unsecured or secured.

Bankruptcy Code Section 101(5)(A) defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" Bankruptcy Code Section 502(a) provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Section 502(b) states that, subject to exceptions that are not relevant to this case, "if such objection to a

---

(B)(i) the plan provides that –
    (I) the holder of such claim retain the lien securing such claim until the earlier of
    –

        (aa) the payment of the underlying debt determined under nonbankruptcy law; or
        (bb) discharge under section 1328; and
    (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
  (iii) if –
    (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
    (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
  (C) the debtor surrenders the property securing such claim to such holder;
(6) the debtor will be able to make all payments under the plan and to comply with the plan;
(7) the action of the debtor in filing the petition was in good faith;
(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and
(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.
For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount[.]"

Bankruptcy Code Section 506 is captioned "Determination of secured status." Section 506(a)(1) states in relevant part that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Section 1325(a)(4) applies to unsecured creditors and requires that:

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

Section 1325(a)(5) applies to secured creditors and requires one of three treatments "with respect to each allowed secured claim provided for by the plan." First, under Section 1325(a)(5)(A), the holder of the claim can accept the plan. If the secured creditor does not accept the plan, two options remain.

- Under Section 1325(a)(5)(B), the debtor may keep the property, but the secured creditor retains the lien until either the underlying debt is repaid or the debtor receives a discharge, whichever occurs first. Under this option, the value as of the effective date of the plan of property that the debtor distributes under the plan must be "not less than the allowed amount of such claim," and the payments must be made periodically, in equal monthly amounts sufficient to provide the secured creditor with adequate protection during the plan period.
- Under Section 1325(a)(5)(C), the debtor may "surrender[] the property securing such claim to such holder[.]"

## II.    The Hanging Paragraph

BAPCPA, which applies to bankruptcy cases filed after October 17, 2005, added the

following unnumbered provision following Section 1325(a)(9):

> For purposes of paragraph (5), section 506 shall not apply to a claim described in
> that paragraph if the creditor has a purchase money security interest securing the
> debt that is the subject of the claim, the debt was incurred within the 910-day [sic]
> preceding the date of the filing of the petition, and the collateral for that debt
> consists of a motor vehicle (as defined in section 30102 of title 49) acquired for
> the personal use of the debtor, or if collateral for that debt consists of any other
> thing of value, if the debt was incurred during the 1-year period preceding that
> filing.

This provision is commonly referred to as the "Hanging Paragraph."[5]  With one exception not

relevant here, the Hanging Paragraph applies only to those creditors who (1) hold a purchase-

money security interest in (2) collateral consisting of a motor vehicle, (3) acquired for personal

use of the debtor, where (4) the debt was incurred within 910 days prior to the filing of the

bankruptcy petition.  Creditors and collateral subject to the Hanging Paragraph are often referred

to respectively as "910 Creditors" and "910 Vehicles."  In the case at bar the parties do not

dispute that Ford is a 910 Creditor.[6]

---

[5]      The hanging paragraph is sometimes cited as "Section 1325(a)(*)." *See, e.g., In re Murray*, 352 B.R. 340
(M.D. Ga. 2006).  In *In re Carver*, 338 B.R. 521, 523 (Bankr. S.D. Ga. 2006), Bankruptcy Judge James D. Walker,
Jr. made the following observations about the Hanging Paragraph:

> The reader immediately notices two problems. First, the provision "has no alphanumeric
> designation and merely dangles at the end of § 1325(a). There is no way to cite to this provision
> other than its proximity to other citable provisions." Dianne C. Kerns, *Cram-a-lot: The Quest
> Continues*, 24-Nov. Am. Bankr.Inst. J. 10, 10 (2005). In addition, the provision is "missing an
> operable word. The first sentence refers to 'the 910-day [period] preceding the date of the filing of
> the petition....'" *Id.* Without the addition of "period," the provision makes little sense and could
> be read to apply only to debts of the type described that were incurred exactly 910 days – no more,
> no less – prior to the petition date. These two problems are mere shadows of the larger
> interpretation difficulties this provision presents.

(footnote omitted).

[6]      As discussed above, Ford seized the Vehicle after obtaining stay relief post-petition, and this was later
characterized by the Debtor in his amended plan as a surrender of the collateral.  The parties have not attempted to
treat these circumstances as anything other than a surrender of collateral pursuant to Section 1325(a)(5)(C).  As the
parties have deemed it to be a surrender, the Court will not draw a distinction, and this opinion expresses no view as
to whether or not a post-petition seizure is the legal equivalent of a surrender.

The Hanging Paragraph is sometimes referred to as the "Anti-Cramdown Paragraph" or "Anti-Bifurcation Paragraph" because its most obvious function is to block bifurcation of a 910 Creditor's lien into secured and unsecured portions so that a debtor who wishes to retain a 910 Vehicle under Section 1325(a)(5)(B) must pay the full amount owing to the secured creditor without regard to the present value of the collateral. Reference to the Hanging Paragraph as the "Anti-Bifurcation Paragraph" acknowledges the mandate in the Hanging Paragraph that Section 506, which defines the extent to which a claim is secured or unsecured, "shall not apply" to a 910 Creditor "for the purposes of" Section 1325(a)(5), which specifies secured creditors' treatment under a Chapter 13 plan.

By its terms, the Hanging Paragraph applies whether the debtor elects to retain the collateral under Section 1325(a)(5)(B) or surrender it under Section 1325(a)(5)(C). Thus, the "Anti-Cramdown Paragraph" becomes the "Anti-Deficiency Paragraph" when applied to Section 1325(a)(5)(C) because, as the majority of cases have held, it prevents bifurcation of the secured claim for purposes of assessing the unsecured portion of the claim. The Hanging Paragraph functions the same way when applied to Section 1325(a)(5)(C) as it does in Section 1325(a)(5)(B); only the result is different. Whereas the Hanging Paragraph prevents bifurcation, and thus cramdown under Section 1325(a)(5)(B), it prevents bifurcation and the resulting deficiency under Section 1325(a)(5)(C).

Having received the 910 Vehicle, Ford now seeks to be treated as an unsecured creditor under 1325(a)(4) based on the shortfall that arose upon its sale of the 910 Vehicle. Ford argues that Section 1325(a)(5)(C) does not provide that surrender is in full satisfaction of the claim. In support of this argument, Ford cites *In re Claypool*, 122 B.R. 371 (Bankr. W.D. Mo. 1991), which rejected a plan that did not satisfy the requirements of Section 1325(a)(4) because it did

not provide for a creditor's unsecured deficiency claim. But for the Hanging Paragraph, Ford is correct. In fact, this is still the treatment given to all secured creditors other than 910 Creditors.[7]

> When the debtor elects to surrender the collateral under [Section 1325(a)(5)(C)], the secured creditor takes possession of the property and sells it in accordance with non-bankruptcy law. If a sale produces a deficiency, the creditor may assert the amount of such deficiency as an unsecured claim against the debtor's remaining assets.

*In re Kerwin*, 996 F.2d 552, 557 (2d Cir. 1993). *See also* New York Uniform Commercial Code §§ 9-610 to 9-624 (McKinney 2007).

When the Hanging Paragraph is applied to Section 1325(a)(5)(C), the result is to equate surrender of the 910 Vehicle to full payment of the claim, denying the creditor an unsecured claim for any deficiency after it liquidates the claim by sale of the vehicle. *In re Osborn*, 2007 WL 542435 at *2 (B.A.P. 8th Cir. Feb. 23, 2007).

> If the claim may not be bifurcated when the debtor proposes to retain the property and pay the claim over time, pursuant to § 1325(a)(5)(B), neither should it be bifurcated when the debtor proposes to treat the claim by surrender of the collateral, pursuant to § 1325(a)(5)(C). Allowing the secured creditor to assert a deficiency claim after disposition of the vehicle, would permit the very thing which the hanging paragraph prohibits, which is bifurcation of the claim. Denial of the deficiency claim upon surrender recognizes the claim as fully secured, a result consistent with the outcome when the debtor chooses to retain the collateral and pay the claim.

*In re Nicely*, 349 B.R. 600, 603 (Bankr. W.D. Mo. 2006). This conclusion follows because the Hanging Paragraph does not differentiate between claim treatment under Section 1325(a)(5)(B) and (C). *See, e.g., In re Maggett*, 2006 WL 3478991 at *2 (Bankr. D. Neb. Nov. 29, 2006). This is because "[w]ithout § 506, a 910 creditor has no statutory basis to assert an unsecured claim after surrender of its collateral." *In re Moon*, 2007 WL 214409 at *4 (Bankr. N.D. Ala. Jan. 26,

---

[7]     Of course, secured creditors that do not qualify as 910 Creditors remain subject to bifurcation of their claims under Section 1325(a)(5)(B) unless barred by application of 11 U.S.C. § 1322(b)(2).

2007) (treating 910 Creditor's claim as fully secured under Section 1325(a)(5)(C) and ruling that surrender satisfied claim in full).

The leading case is *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006). In *Ezell*, the Chapter 13 debtors proposed to surrender a 910 Vehicle "in full satisfaction" of the outstanding debt. *Ezell* held that the hanging paragraph "as mandated by its terms, applies equally" to Section 1325(a)(5)(B) and (C). *Id.* at 342.

> Therefore, a creditor whose claim falls within the scope of the Anti-Cramdown Paragraph is fully secured under Revised § 1325(a)(5)(C), regardless of the amount it might realize from the liquidation of its collateral upon surrender. Because application of § 506(a) is entirely removed from the picture, there can be no deficiency balance, either secured or unsecured, and surrender satisfies an allowed secured claim in full.

*Id.* at 342. *Ezell* notes that prior to the enactment of BAPCPA, where a debtor proposed to surrender collateral pursuant to Section 1325(a)(5)(C), the secured creditor received an unsecured claim for any difference between the amount owed to the creditor and the amount of the allowed secured claim. *Id.* at 337. *Ezell* examined the law prior to BAPCPA and found that Section 506 was implicated by both Section 1325(a)(5)(B) and (C). Although the two sections "provided different remedies and were mutually exclusive ... both relied upon Pre-BAPCPA § 506(a) to bifurcate a creditor's claim into its allowed secured and allowed unsecured components." 338 B.R. at 338 (citation and footnote omitted). Thus, under BAPCPA, where the hanging paragraph applies and precludes bifurcation of the secured claim into secured and unsecured components, the allowed secured claim is fixed at the amount at which the claim is filed.

> Accordingly, under Revised § 1325(a)(5), a creditor holding a [910 Claim] is fully secured for the amount of its claim, which is, in actuality the debt owed. If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the

> life of the plan. It only stands to reason that the same analysis is true when applied
> to surrender under Revised § 1325(a)(5)(C) – the creditor is fully secured, and
> surrender therefore satisfies the creditor's allowed secured claim in full."

*Id.* at 340. Ford argues that the conclusion in *Ezell* is a fiction. *See* Ford's December 5, 2006

Memorandum of Law, p. 10. The Court agrees, but it is a fiction that is imposed by the plain

meaning of the Hanging Paragraph. The same fiction results by holding that an undersecured

creditor is "fully secured" under Section 1325(a)(5)(B). The law is no stranger to fiction. For

examples in the Bankruptcy Code, *see* 11 U.S.C. § 101(41) (term "person" includes partnership

and corporation); 11 U.S.C. § 365(g) (rejection of executory contract or lease in bankruptcy case

constitutes a breach "immediately before the date of the filing of the petition"); 11 U.S.C. § 544

(a) (granting trustee the rights and powers of certain types of creditors "whether or not such a

creditor exists"); 11 U.S.C. § 1111(b) (deeming holders of secured claims to have recourse

against the debtor "whether or not such holder has such recourse").


### A.    The Hanging Paragraph is Unambiguous

"The starting point in discerning congressional intent is the existing statutory text ... and

not the predecessor statutes. It is well established that 'when the statute's language is plain, the

sole function of the courts – at least where the disposition required by the text is not absurd – is

to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023,

1030 (2004) (citation omitted) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank,*

*N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

In *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238, 109 S.Ct. 1026, 1029 (1989), the

Supreme Court was called upon to interpret 11 U.S.C. § 506, which was "enacted as part of the

extensive 1978 revision of the bankruptcy laws." The Court noted: "In such a substantial

overhaul of the system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." 523 U.S. at 240-241, 109 S.Ct. at 1030.

Interpreting a different Bankruptcy Code section in *Lamie v. U.S. Trustee*, the Supreme Court noted: "The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue." 540 U.S. at 534, 124 S.Ct. at 1030. Thus, the plain meaning applied. As *Ezell* observed, although the language in the Hanging Paragraph is confusing it is "not particularly ambiguous." 338 B.R. at 340. The Court agrees with *Ezell*. Although poorly drafted, the Hanging Paragraph is not ambiguous. The Court cannot find any plain reading that would support Ford's position. It is not possible to read the Hanging Paragraph in such a way that it would function differently when applied to 910 Claims under different subsections of Section 1325(a)(5). Ford cannot have an unsecured claim in this case because there is no way to determine whether a deficiency claim exists except by reference to Section 506(a), which determines the unsecured portion of a claim based on the value of the secured claim. In Chapter 13, to determine the value allocated to the secured creditor by Section 506 on account of its secured claim, it is necessary to refer to the treatment elected by the debtor under Section 1325(a)(5); where the creditor is a 910 Creditor, the Hanging Paragraph states that "section 506 shall not apply." This results in denial of an unsecured claim to a 910 Creditor.

**B.    Cases Rejecting the Anti-Deficiency Interpretation**

Ford argues that historically, Section 506 has "little, if anything, to do with the surrender situation," and that "the matter was instead dealt with under state law, most notably the UCC." *See* Ford's December 5, 2006 Memorandum of Law (ECF Docket No. 35), p. 7.

*In re Zehrung*, 351 B.R. 675, 677 (W.D. Wis. 2006), rejected a reading of the Hanging Paragraph that barred deficiency claims to 910 Creditors. Calling this result a "potential absurdity," *In re Zehrung* holds that once the debtor opts to surrender collateral under 11 U.S.C. §1325(a)(5)(C), the debtor's estate loses any interest in that collateral, and applicable state law takes over. The creditor is then free to liquidate the collateral, and to return for the deficiency, as allowed under state law, as an unsecured claim. *Zehrung* argues that an "allowed secured claim" in 11 U.S.C. §1325(a)(5) is determined through the application of 11 U.S.C. §502 without reference to §506.

In the view of *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006), nothing prevents the formerly secured creditor from liquidating the collateral and filing an unsecured claim for the deficiency realized after the sale, just as they were able to do pre-BAPCPA. *Particka* says claims are allowed by reference to Section 502, not 506 because "the right to pursue a deficiency claim derives from the recourse nature of an obligation under non-bankruptcy law after disposition of collateral." *Id.* at 626.

**1.    State Law Arguments**

Cases such as *Particka* and *Zehrung* avoid the anti-deficiency effect of the Hanging Paragraph by circumventing Section 506 in several ways. First, they argue that the right to an

unsecured claim is determined by state law, not Section 506.[8] Similar reasoning was employed

in *In re Brooks*, 344 B.R. 417, 422 (Bankr. E.D.N.C. 2006):

---

[8]      *Zehrung's* ruling that deficiency claims are determined by state law relies on the following quote from Collier on Bankruptcy:

> The Code is silent as to the extent to which the debtor or the court, as a court of equity, may impose reasonable restrictions on the manner in which the holder of an allowed secured claim may dispose of collateral surrendered by the debtor under section 1325(a)(5)(C). The applicable provisions of the Uniform Commercial Code control the disposition of collateral surrendered under section 1325(a)(5)(C) with the result that the holder of an allowed secured claim would be entitled to an allowed unsecured claim for the amount remaining due the holder after an appropriate disposition of the surrendered collateral, unless the debtor and the holder otherwise agree or unless the collateral was accepted by the creditor in full satisfaction of the entire claim in accordance with U.C.C. Revised § 9-620 or other applicable nonbankruptcy law.

8 Collier on Bankruptcy ¶1325.06[4] at 1325-49 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006) (footnotes omitted). *See In re Zehrung*, 351 B.R. at 678. As one court has observed:

> Treatises like Colliers are intended to summarize decided law, and thus are only authoritative to the extent they are supported by case law. The provision of Colliers lacks citations to published case law, and the Court did not find any supporting authority in its own research. Thus, the Court respectfully disagrees with *Zehrung's* contention that a creditor's right to a deficiency claim arises from state law. The creditor's right to a deficiency claim arises from § 506's bifurcation provisions.

*In re Durham*, 2006 WL 4058354 at *3 (Bankr. D. Utah Dec. 14, 2006). Another court notes that this excerpt from Collier on Bankruptcy does not discuss the hanging paragraph:

> This language appears to answer the question for the Creditors, since it explicitly states that surrender of collateral under § 1325(a)(5)(c) would allow a 910-creditor to pursue an "allowed unsecured claim" for the deficiency. The problem with this paragraph, and thus with *Zehrung's* reliance on it, is that this particular language in *Collier* appears to be a relic from pre-BAPCPA editions of the treatise. *See* 8 *Collier on Bankruptcy* ¶ 1325.06[4] (15th ed.2003). The utility of this passage after BAPCPA is therefore questionable, since the discussion does not take the hanging paragraph into account at all.

*In re Turkowitch*, 355 B.R. 120, 129 (Bankr. E.D. Wis. 2006). Elsewhere, the Collier treatise states:

> It is possible that [the Hanging Paragraph] was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims could be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims, it does not [sic] carry out such intent. In fact, earlier versions of the 2005 bankruptcy legislation had contained language which eliminated only the section 506(a) bifurcation of certain claims into secured and unsecured claims based on the value of the property, but did not eliminate their status as allowed secured claims. However, that language was not retained. Courts are required to implement the language of the statute and not what they think Congress might have intended instead.

8 Collier on Bankruptcy ¶1325.06[1][a] at 1325-28 to 1325-29 (footnotes omitted) (citing H.R. 833, 106th Cong. 1st Sess. § 122 (1999)). *See also In re White*, 352 B.R. 633, 642-643 (Bankr. E.D. La. 2006) ("The two leading commentators on Chapter 13, Judge Keith Lundin and *Collier on Bankruptcy* both strenuously question the wisdom of recognizing a secured claim without reference to § 506.").

- 14 -

> The "determination of property rights in the assets of a bankrupt's estate" is left to state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Nobelman v. American Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). However, state law only controls to the "extent such rights are not modified by the Bankruptcy Code." *In re Fleming,* 339 B.R. at 724. Section 506 modifies the rights of creditors, secured by a lien under state law, by allowing their claim to be treated as unsecured if the value of the creditor's collateral is less than the amount of the claim. If § 506 does not apply, the rights of the secured creditor under state law are not modified and the claim remains fully secured.

*See also In re Sessions,* No. 05-17647, slip op. (Bankr., S.D. Ala. March 13, 2006) (concluding that "the removal of 910 claims from treatment under § 506 means that the Court must look to other places in the Bankruptcy Code or other law to determine how to treat 910 claims," and because no other Bankruptcy Code section states how 910 Claims are to be treated, courts must look to state law).

These cases overlook the fact that secured claims are defined by the Bankruptcy Code in Section 506, but Congress has declared that definition inapplicable to certain types of claims for the purpose of their treatment in a Chapter 13 plan. This Court agrees with the holding in *In re White,* 352 B.R. 633, 643 (Bankr. E.D. La. Sept. 29, 2006), that Congress created the definition of "secured claim" in Section 506 and is free to expand or limit the definition and its application and has done so with the Hanging Paragraph. Thus, "State law may control the requirements for creating and perfecting a lien, but it is the purview of the Bankruptcy Code to both recognize the lien and provide for its treatment." *Id. See also In re Durham,* 2006 WL 4058354 at *3-4 (Bankr. D. Utah Dec. 14, 2006) (rejecting arguments in *Particka* and *Zehrung* "that state law has always governed deficiency claims where a debtor surrenders collateral"; "creditor's right to a deficiency claim arises from § 506's bifurcation provisions"); *In re Montoya,* 341 B.R. 41, 44 (Bankr. D. Utah 2006) ("The existence of a claim is determined by non-bankruptcy substantive law, whereas valuation of the claim is determined by § 506."); *In re Ezell,* 338 B.R. at 339

(rejecting argument that Section 506 did not apply to surrender claims prior to the enactment of

BAPCPA; "Valuation of a creditor's allowed secured claim under Pre-BAPCPA §506(a) was

'determined in the light of the purpose of the valuation and of the proposed disposition or use of

such property'").

As *In re Osborn* observes: "The allowed unsecured claim comes into being not because

of the sale pursuant to state law, but because, when § 506(a) is applied, the value of the

collateral, whether determined by estimation for use under § 1325(a)(5)(B) or by surrender and

eventual liquidation for use under § 1325(a)(5)(C), is less than the debt." 2007 WL 542435 at *4

(citing pre-BAPCPA cases that applied Section 506(a) when the debtor surrendered collateral

pursuant to a Chapter 12 or Chapter 13 reorganization plan). Thus, "[u]pon surrender under Pre-

BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed

secured claim was determined, while, for cramdown purposes under Pre-BAPCPA §

1325(a)(5)(B), replacement value was the criteria." *In re Ezell*, 338 B.R. at 339-340 (citing

*Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 961-962, 117 S.Ct. 1879, 1885 (1997)).

When an undersecured creditor seeks a deficiency claim against a debtor in bankruptcy, it

should be emphasized that, however the deficiency might be calculated under state law, the

creditor is seeking allowance of the deficiency as a bankruptcy claim. The Bankruptcy Code,

and not state law, determines whether and to what extent such claim should be allowed in the

bankruptcy estate. The starting point for allowance of a deficiency claim is Section 506(a)(1),

which states that an allowed claim of a creditor that is secured by a lien on property in which the

state has an interest is, first, "a secured claim to the extent of the value of such creditor's

interest," and is to be treated as an unsecured creditor "to the extent that the value of such

creditor's interest ... is less than the amount of such allowed claim." Section 506(a)(1) states

- 16 -

that the value "shall be determined in light of the purpose of the valuation and of the proposed

<u>disposition or use</u> of such property, and in conjunction with any hearing on such disposition or

use <u>or on a plan affecting such creditor's interest</u>." (emphasis added). Thus, the valuation of a

secured claim and allowance of any deficiency claim in a bankruptcy case is controlled by

Section 506(a)(1), regardless of whether the property is to be "disposed of" (as in a Chapter 13

plan that proposes surrender under Section 1325(a)(5)(C)) or "used" (as in a Chapter 13 plan

proposing retention of the property under Section 1325(a)(5)(B)). Section 506(a)(1) also states

that the test for valuation in that section will be used "in conjunction with any hearing ... on a

plan affecting such creditor's interest." Because the Hanging Paragraph directs that Section 506

"shall not apply" to treatment of 910 Creditors' claims, there is no mechanism for allowance of

an unsecured claim to those creditors, either as bifurcation of the claim (where the creditor

receives the treatment under Section 1325(a)(5)(B)) or as a deficiency claim (for treatment under

Section 1325(a)(5)(C)).

### 2.    <u>Argument that Section 506 is Not "Definitional"</u>

Second, and somewhat related to the state-law argument, the cases Ford relies upon argue

that Section 506 is not a "definitional" section and cannot determine whether 910 Creditors are

secured or unsecured. Under this rationale, Section 506 does not create the deficiency claim, it

merely allocates it as a separate unsecured claim while the bankruptcy estate retains an interest.

*In re Particka*, 355 B.R. at 626.  *In re Latonya Sharise Brown*, 339 B.R. 818, 821 (Bankr. S.D.

Ga. 2006) held that it was "neither necessary nor appropriate to contort § 506(a) into a

definitional provision" because other Bankruptcy Code sections addressed whether a claim is

allowed and secured. *In re Latonya Sharise Brown* relied on language from the Supreme Court's

decision in *Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S.Ct. 773, 777 (1992):

> In the alternative, respondents, joined by the United States as *amicus curiae,*
> argue more broadly that the words "allowed secured claim" in § 506(d) need not
> be read as an indivisible term of art defined by reference to § 506(a), which by its
> terms is not a definitional provision. Rather, the words should be read term-by-
> term to refer to any claim that is, first, allowed, and, second, secured.

The quote is taken from the summary of the respondents' arguments in that case. Later in the

decision, the Court noted that the recital of the parties' positions "demonstrates that § 506 of the

Bankruptcy Code and its relationship to other provisions of that Code do embrace some

ambiguities." 502 U.S. at 416.  The Court then made it clear that the ruling focused only on the

issue before the Court – whether Section 506(d) permitted a debtor to "strip down" a lien on real

property – and other issues would "await their legal resolution on another day." *Id.* at 416-417.

As noted in *In re White*, "the notion that § 506 is not definitional is clearly at odds with

United States Supreme Court precedent," as well as the plain reading of Section 506 which is

titled "Determination of secured status." 352 B.R. at 642.

> Under [11 U.S.C. § 1325(a)], a plan's proposed treatment of secured claims can
> be confirmed if one of three conditions is satisfied: The secured creditor accepts
> the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property
> securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the
> so-called "cram down" power, see § 1325(a)(5)(B). Under the cram down option,
> the debtor is permitted to keep the property over the objection of the creditor; the
> creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor
> is required to provide the creditor with payments, over the life of the plan, that
> will total the present value of the allowed secured claim, *i.e.,* the present value of
> the collateral, see § 1325(a)(5)(B)(ii). **The value of the allowed secured claim is
> governed by § 506(a) of the Code.**

*Assocs. Commercial Corp. v. Rash*, 520 U.S. at 956-957, 117 S.Ct. at 1882-1883 (emphasis

added) (footnote omitted).  In *Rash*, a case decided after *Dewsnup*, the Supreme Court found that

Section 506 "tells us that a secured creditor's claim is to be divided into secured and unsecured

portions, with the secured portion of the claim limited to the value of the collateral." 520 U.S. at

961.  "To separate the secured from the unsecured portion of a claim, a court must compare the

creditor's claim to the value of 'such property,' *i.e.,* the collateral." *Id.*

Section 506, enacted as part of the extensive 1978 revision of the bankruptcy laws, governs the definition and treatment of secured claims, *i.e.*, claims by creditors against the estate that are secured by a lien on property in which the estate has an interest.

*U.S. v. Ron Pair Enters., Inc.*, 489 U.S. at 238-239, 109 S.Ct. at 1029.

### 3.    Argument that Surrender Eradicates Estate's Interest

Third, the cases argue that Section 506 does not, and never did apply to the allowance of

a deficiency claim, because surrender deprives the debtor and the estate of any interest in the

collateral. *Zehrung* reasons, without citation to supporting authority:

> A creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim. Section 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender.

351 B.R. 678. *Particka*, like *Zehrung*, reasons that Section 506 "applies by its terms only to 'an

allowed claim of a creditor secured by a lien on property *in which the estate has an interest*.'"

355 B.R. at 624 (alteration in original). *Particka* extrapolates this language and concludes that

upon confirmation of the Chapter 13 plan, the estate no longer has an interest in the collateral,

and there is no longer any reason to use the valuation process in Section 506 to determine the

amount of the secured claim. Thus, *Particka* reasons that a secured creditor remains "free to

foreclose upon its security interest under applicable non-bankruptcy law and apply the proceeds

of sale of the collateral to its claim" and also "retains its right to an allowed unsecured deficiency

claim against a debtor under § 502 of the Bankruptcy Code." *Id.*

> Far from somehow *creating* a deficiency claim for an undersecured creditor, § 506(a) merely *allocates* the undersecured creditor's claim into secured and unsecured portions when the estate has an interest in the property. By definition, 'surrender' terminates the estate's interest in the property, thereby rendering § 506(a) entirely inapplicable."

*Id.* at 626 (emphasis in original). *See also In re Morales*, 2007 WL 92414 at *5 (Bankr. N.D. Ill.

Jan. 11, 2007) (when Chapter 13 plan provides for surrender of a 910 Vehicle, estate no longer

has interest, secured claim is determined by reference to state law, and creditor may file unsecured claim for deficiency).

The argument that a debtor's surrender of collateral immediately terminates the interest of the debtor and the estate is in contravention of both the Bankruptcy Code and state law. The argument was rejected by *In re Quick*, 2007 WL 269808 at *5 (Bankr. N.D. Okla. Jan. 26, 2007) because "[t]here is nothing in the Bankruptcy Code which indicates that a debtor's (or her estate's) interest in property terminates immediately upon surrender of the property to the creditor." *In re Quick* cites Oklahoma's version of Uniform Commercial Code § 9-623(c), which gives a debtor an interest in collateral repossessed by a secured creditor until that collateral has been disposed of by the secured creditor. *See also* New York Uniform Commercial Code § 9-623(c) (McKinney 2007). The debtor and the estate would also retain a state law interest and a bankruptcy interest in the collateral to the extent of any surplus proceeds. More importantly, a Chapter 13 debtor and the debtor's estate will continue to have an "interest" in the valuation of the collateral for the purposes of proposing and confirming a plan of reorganization, and this is acknowledged by the language in Section 506 which sets the method of valuation for claims purposes, which will vary "in light of the purpose of the valuation," including whether the debtor proposes "disposition or use of such property."

The other reason why these arguments must be rejected is found in the closing words of Section 506(a)(1), which makes it clear that the valuation extends to "such creditor's interest." The purpose of Section 506, captioned "Determination of secured status" is to determine the extent to which a creditor may have a secured or unsecured claim allowed in the bankruptcy case. Thus, Section 506 really evaluates the "creditor's interest," not the debtor's or estate's interest. Section 506 is located in Chapter 5 of the Bankruptcy Code, Subchapter I, which is

captioned "CREDITORS AND CLAIMS." The property comprising the debtor's estate is defined elsewhere in Chapter 5 of the Bankruptcy Code, in Subchapter III, which is captioned "THE ESTATE." Specifically, property of the estate is defined in 11 U.S.C. § 541 and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(b) lists nine categories of property and interests that are not treated as property of the estate, and none of those categories extend to collateral that is surrendered to a secured creditor.

### 4.   Resort to Other Bankruptcy Law

Fourth, the cases argue that although Section 506 does not apply to a 910 Claim, other provisions of the Bankruptcy Code entitle a 910 Creditor to an unsecured claim. *In re Hoffman*, 2006 WL 4071828 at *2-3(Bankr. E.D. Mich. Dec. 29, 2006) followed *Particka*, emphasizing that the Hanging Paragraph applies "solely" for the purposes of Section 1325(a)(5) and thus "has no impact on other provisions of the Bankruptcy Code which protect the 910 creditor's right to an unsecured deficiency claim" such as "the claim allowance/disallowance provisions of Code § 502(a) and 502(b), § 506 itself, and all of the provisions of Chapter 13 that are normally available for the benefit and protection of unsecured creditors." 2006 WL 4071828 at *3 (footnote omitted). Where a debtor retains a 910 Vehicle under Section 1325(a)(5)(B), *Hoffman* reasons that the debtor is required to propose a plan that will pay the 910 Creditor's claim in full because "in the case of a 910 creditor, the 'allowed secured claim,' within the meaning of the opening words of § 1325(a)(5), is the full amount of the 910 creditor's claim." *Id.* at 2. *Hoffman* draws a distinction where the debtor proposes to surrender a vehicle in satisfaction of Section 1325 because "[n]othing in the language of § 1325(a)(5) suggests that surrender of the vehicle *satisfies* the 'allowed secured claim provided for by the plan.'" *Id.* at 2-3 (emphasis in the

original). Thus, Section 1325(a)(5)(C) "merely means that if the debtor surrenders the vehicle, the debtor meets the confirmation requirement imposed by § 1325(a)(5). Unambiguously, it means nothing more than this." *Id.* at 3.

*In re Gentry*, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006) addressed *Hoffman's* argument, that the Hanging Paragraph only prohibits Section 506 bifurcation when applying Section 1325(a)(5) and that a 910 Claim can still be bifurcated when determining whether other requirements of confirmation, including § 1325(a)(4), have been met. As *Gentry* noted of the argument in *Hoffman*, it "does have some facial appeal at first blush" because the hanging paragraph suggests that Section 506 does not apply "[f]or purposes of paragraph (5)," which suggests that Section 506 would apply for other purposes, or to other paragraphs. 2006 WL 3392947 at *8. Ultimately, the argument cannot be sustained.

> The problem with this reading is that paragraph (5) is the only paragraph in § 1325(a) that even references "allowed secured claim provided for by the plan" or even allowed secured claim. There is no other provision which could logically be read to mean "for this purpose" or "in this paragraph" section 506 *shall* apply to allowed secured claims since no other section governs the treatment of secured claims in a chapter 13 plan.

*Id.* at *8. For the reasons this Court has already expressed, an unsecured deficiency claim is only permitted if reference to Section 506(a) is allowed, and the Hanging Paragraph states that "section 506 shall not apply."

### C.    Legislative History

Because this Court finds that the Hanging Paragraph is unambiguous, it is not necessary to review the legislative history. However, a discussion of the legislative history is helpful in order to rebut another line of cases, lead by *In re Duke*, 345 B.R. 806 (Bankr. W.D. Ky. 2006), which found that the Hanging Paragraph was ambiguous and concluded that the provision not be

read to permit surrender of 910 Vehicles in full satisfaction of the debts. *In re Duke* concluded:

"If Congress had intended to enact what would essentially be an 'anti-deficiency' provision, it

would have made its intentions very clear in the statute." *Id.* at 809. Although *Zehrung*

apparently found that the Hanging Paragraph was unambiguous, that case did ponder

congressional intent:

> The hanging paragraph was adopted as part of Public Law 109-8, section 306, 119
> Stat. 80, entitled "Giving Secured Creditors Fair Treatment in Chapter 13." The
> section specifically enacting the hanging paragraph is entitled "Restoring the
> Foundation for Secured Credit." It seems extremely unlikely, given the purposes
> expressed in the titles of the amendments, that the intent of the amendment was to
> eliminate the long existing right of creditors in bankruptcy to an unsecured
> deficiency claim.

351 B.R. at 678.

> The following comments from the House Report address the Hanging Paragraph:

> Protections for Secured Creditors. S. 256's protections for secured creditors
> include a prohibition against bifurcating a secured debt incurred within the 910-
> day period preceding the filing of a bankruptcy case if the debt is secured by a
> purchase money security interest in a motor vehicle acquired for the debtor's
> personal use. Where the collateral consists of any other type of property having
> value, S. 256 prohibits bifurcation of specified secured debts if incurred during
> the one-year period preceding the filing of the bankruptcy case. The bill clarifies
> current law to specify that the value of a claim secured by personal property is the
> replacement value of such property without deduction for the secured creditor's
> costs of sale or marketing. In addition, the bill terminates the automatic stay with
> respect to personal property if the debtor does not timely reaffirm the underlying
> obligation or redeem the property. S. 256 also specifies that a secured claimant
> retains its lien in a chapter 13 case until the underlying debt is paid or the debtor
> receives a discharge.

H.R. REP. 109-31 at 17 (footnote omitted).

> Sec. 306. Giving Secured Creditors Fair Treatment in Chapter 13. Subsection (a)
> of section 306 of the Act amends Bankruptcy Code section 1325(a)(5)(B)(i) to
> require – as a condition of confirmation – that a chapter 13 plan provide that a
> secured creditor retain its lien until the earlier of when the underlying debt is paid
> or the debtor receives a discharge. If the case is dismissed or converted prior to
> completion of the plan, the secured creditor is entitled to retain its lien to the
> extent recognized under applicable nonbankruptcy law.

> Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code
> specifying that Bankruptcy Code section 506 does not apply to a debt incurred
> within the two and one-half year period preceding the filing of the bankruptcy
> case if the debt is secured by a purchase money security interest in a motor
> vehicle acquired for the personal use of the debtor within 910 days preceding the
> filing of the petition.

H.R. Rep. 109-31 at 71-72. As other courts have noted, these statements of congressional intent

basically mirror the statutory language with no further clarification. *Ezell*, 338 B.R. at 341. *Ezell*

found that although the legislative history provided little guidance, it also did not provide any

evidence that the Hanging Paragraph did not apply equally to Section 1325(a)(5)(B) and (C). *Id.*

at 340-341. On this point, a very important observation was made in *In re Payne*, 347 B.R. 278,

282 (Bankr. S.D. Ohio 2006): "Silence in the legislative history cannot be utilized to create an

ambiguity in the statutory language."

> While Congress may have intended to afford additional protections to creditors with the
> BAPCPA amendments, the Court is not satisfied that it intended a different result with
> the hanging paragraph of § 1325(a) than is set forth in the plain language. [D]espite its
> partial moniker of "Consumer Protection Act", many of the changes wrought by
> BAPCPA were instigated by the credit industry and Congress did not intend to lessen the
> rights of creditors through the BAPCPA amendments. However, the Court cannot infer
> limitations on the application of the "hanging paragraph" which are not present. Had
> Congress intended to limit application of the statute, it could have easily done so within
> the language of the "hanging paragraph" of § 1325(a) or within the language of § 506.
> Congress is assumed to know and understand the effect of its legislation, and this Court
> may not rewrite the statute as enacted by Congress.

*Id.* at 282-283. *See also In re Maggett*, 2006 WL 3478991 at *2 (Bankr. D. Neb. Nov. 29, 2006)

("Had Congress meant that a debtor who kept the vehicle had to pay the full debt, but the debtor

who surrendered the vehicle would still be subject to a deficiency claim, Congress could have

easily made that clear. Since it made no such distinction between the two subsections, the claim

should be treated the same for each, that is, fully secured."); *In re Turkowitch*, 355 B.R. 120, 126

(Bankr. E.D. Wis. 2006) (Section 306 of BAPCPA "was not entitled 'Giving Secured Creditors

Improved Treatment in Chapter 13,' but 'Giving Secured Creditors *Fair* Treatment in Chapter

13") (emphasis in original); *In re Gentry*, 2006 WL 3392947 at *8 (no suggestion in legislative

history that hanging paragraph only applies to § 1325(a)(5) or that Congress intended for a 910

Claim to be bifurcated for purposes of applying all other Code sections); *In re Robert Earl*

*Brown*, 346 B.R. 868, 875 (Bankr. N.D. Fla. 2006) ("As far as this Court can ascertain, Congress

never expressed any intent contrary to the result reached by the *Ezell* court and this Court, and it

is illogical to conclude that the same language, *i.e.*, the Hanging Paragraph means something

different in different contexts.").


### D.    Other Arguments

Ford claims that the Court's ruling would offend a primary bankruptcy theme, "equality

of distribution." *See* Ford's Dec. 29, 2006 Memo of Law, p. 5.  Ford argues:

> A motor vehicle creditor whose claim falls within the Anti-Bifurcation Paragraph
> of § 1325 has, under the *Ezell* construction of that provision, no right to a
> deficiency claim where the Debtor surrenders the vehicle, while the motor vehicle
> creditor whose claim does not fall within the Anti-Bifurcation Paragraph is
> permitted its traditional unsecured claim for the deficiency balance.

*Id.* at 4-5.  The problem with this argument is that it fails to explain why the Hanging

Paragraph's application to Section 1325(a)(5)(B) would not also be regarded as "unequal."

Under Section 1325(a)(5)(B) a 910 Creditor is afforded greater protection, which could be

considered an "unequal distribution" in relation to creditors whose collateral is not covered by

the Hanging Paragraph.  Under Section 1325(a)(5)(B), 910 Creditors are treated as "fully

secured" without regard to the true value of the collateral and assured full payment, whereas

other secured creditors may be permitted only their traditional unsecured claim for the deficiency

balance.

Ford's argument here raises the larger issue of whether the Anti-Deficiency Paragraph is "fair." To be sure, Ford stands to recover more under the Hanging Paragraph when it functions as the "Anti-Cramdown Paragraph," and more under state law, including the Uniform Commercial Code, than it would under the Anti-Deficiency Paragraph. Although Ford argues that the result under Section 1325(a)(5)(C) is disparate and ultimately unfair when compared with the treatment it would receive under Section 1325(a)(5)(B), nothing in Section 1325(a)(5) assures that a secured creditor will be treated consistently under each of the three options. The decision to retain collateral under Section 1325(a)(5)(B) or surrender it under Section 1325(a)(5)(C) belongs to the debtor; thus, to argue that Section 1325(a)(5)(B) and (C) should be interpreted to give a secured creditor similar treatment under each is to argue that the debtor should have a less meaningful choice.

*Zehrung* identified certain "anomalies" that would result from the reading of the statute that this Court advances. For example, creditors who accepted surrender occurred prior to the bankruptcy filing or hold a non-purchase money claim would be entitled to an unsecured deficiency claim and fare better than 910 Creditors whose collateral is surrendered under Section 1325(a)(5)(C). 351 B.R. at 678. *Particka* observed: "It is nonsensical to have the disallowance of an unsecured deficiency claim turn on whether the 910 creditor first moved to lift the stay or had its collateral shoved at it by a debtor under a plan or, worse yet, by a debtor who first successfully resists a motion to lift the stay only to then file a plan that says 'eat metal' to the 910 creditor!" 355 B.R. at 628. *In re Turkowitch*, 355 B.R. at 126 answers that such treatment is fair because 910 Creditors are protected from the "pre-BAPCPA 'double risks' of depreciation of their collateral and nonpayment by the debtor." (citing *Assocs. Commercial Corp. v. Rash*, 520 U.S. at 954, 117 S.Ct. at 1881 ("When a debtor surrenders the property, a creditor obtains it

immediately, and is free to sell it and reinvest the proceeds. If a debtor keeps the property and

continues to use it, the creditor obtains at once neither the property nor its value, and is exposed

to double risks against which the Code affords incomplete protection: The debtor may again

default and the property may deteriorate from extended use.")). *Turkowitch* reasons that "there is

nothing unfair about denying the 910-creditor a deficiency claim that will dilute the distribution

to other creditors or increase the debtor's obligations under a plan." 355 B.R. at 127. *In re Ezell*

found that a debtor's surrender of collateral in full satisfaction of the claim under Section

1325(a)(5)(C) was "fair and in harmony with the language of the Anti-Cramdown Paragraph."

338 B.R. at 342.

> A creditor whose allowed secured claim falls within the terms of the Anti-
> Cramdown Paragraph is no more or less disadvantaged by the debtor's surrender
> of its collateral under Revised § 1325(a)(5)(C) than is the debtor who, if he or she
> chooses to retain the collateral, must, in compliance with Revised §
> 1325(a)(5)(B), pay the full amount of the debt in satisfaction of the creditor's
> allowed secured claim."

*Id. See also In re Robert Earl Brown*, 346 B.R. at 875 (application of the Hanging Paragraph to

Section 1325(a)(5)(C) does not result in a windfall to debtors because "any benefit would inure

largely to the unsecured creditors"). Having found that the Hanging Paragraph unambiguous,

this Court takes no position as to whether or not its application is "fair" or whether it is more or

less fair than the interpretation Ford urges. All that this Court holds is that applying the Hanging

Paragraph according to its terms does not create an absurd result. *Lamie v. U.S. Trustee*, 540 U.S.

at 534, 124 S.Ct. at 1030.

     Finally, Ford argues that to rule as this Court does would violate the due process clause

contained in the Fifth Amendment of the United States Constitution.[9] Ford characterizes the

---

[9]    U.S. Const. amend. V requires:

    No person shall be held to answer for a capital, or otherwise infamous crime, unless on a
    presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in

Court's ruling as the "taking of private property without compensation." *See* Ford's Dec. 29, 2006 Memo of Law, p. 5. This same argument was recently rejected by another court for lack of merit. "The Fifth Amendment deals with property rights. The right to a deficiency judgment is not a property right; it is a contractual right." *In re Quick*, 2007 WL 269808 at *7-8. *See also United States v. Security Indus. Bank*, 459 U.S. 70, 75, 103 S.Ct. 407, 411 (1982) ("our cases recognize, as did the common law, that the contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral"). It should be emphasized that the Vehicle, the property subject to Ford's security interest, has already been surrendered to Ford, leaving only the contractual rights under the retail installment contract.

## CONCLUSION

Ford's objection to the Debtor's amended plan is overruled. Counsel for the Debtor is directed to submit an order consistent with this decision. A confirmation hearing is scheduled on March 13, 2007 at 1:30 p.m. to consider whether the plan is now ready to be confirmed.

Dated: Poughkeepsie, New York
     March 13, 2007        /s/ Cecelia Morris
                            CECELIA G. MORRIS
                            UNITED STATES BANKRUPTCY JUDGE

---

the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.