UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In Re:

    BALDASSARRE PINTI
    aka BUDDY PINTI,

                    Debtor.
_____

FORD MOTOR CREDIT COMPANY,

                Appellant,

   -against-

BALDASSARRE PINTI
aka BUDDY PINTI,

               Appellee.
_____

District Court
Civil Docket
Case No. 7:07-cv-02848-SCR

Bankruptcy Court
Case No. 06-35230-CGM
(Chapter 13)

# BRIEF OF APPELLANT FORD MOTOR
# CREDIT COMPANY

**Deily, Mooney & Glastetter, LLP**
**Attorneys for Ford Motor Credit Company**
**8 Thurlow Terrace**
**Albany, New York  12203**
**(518) 436-0344**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ................................1

STATEMENT OF THE ISSUE PRESENTED ...................................................1

STATEMENT OF THE APPLICABLE STANDARD FOR REVIEW...........................1

STATEMNET OF THE CASE...................................................................1

    A.    Nature of the Case and Proceedings Below ...............................1

    B.    Statement Facts .....................................................................2

ARGUMENT .......................................................................................4

    Summary............................................................................4

    <u>POINT I</u>

    SURRENDER VEHICULAR COLLATERAL IN FULL SATISFACTION
    OF FORD CREDIT'S CLAIM AS PART OF DEBTOR'S CHAPTER 13
    PLAN, THEREBY DEPRIVING FORD CREDIT OF AN UNSECURED
    CLAIM FOR THE DEFICIENCY RESULTING FROM DISPOSITION OF
    THE VEHICLE……………………………………………………………7

    A.    The Bankruptcy Court Erred in Determining that Section 506 is the
        Sole Source of Ford Credit's Deficiency Claim…………………………..9

    B.    The Hanging Paragraph Does Not Deem Ford Credit's Claim
        To be Fully Secured……………………………………………………15

    C.    The Bankruptcy Court's Decision Raises Serious Constitutional Issues…16

    D.    The *Travelers* Decision Rejects the *Ezell* Rationale on Every
        Significant Point………………………………………………………18

    E.    The Decision Rejecting *Ezell* are More Rationale and are in Harmony
        With Supreme Court Precedent…………………………………………20

CONCLUSION…………………………………………………………………...…25

# TABLE OF AUTHORTIES

Page

Federal Cases

*Butner v. United States*, 440 U.S. 48, 57, 54, 99 S. Ct. 914, 59 L.Ed.2d. 136 (1979)…13, 14, 18

*Credit Union v. Zehrung (In re Zehrung)*, 351 B.R. 675 (W.D. Wis. 2006)....................20

*Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)..................................................13

*In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) ..................................1

*In Re Blanco*, ____ B.R. ____, 2007 WL 733973 ......................................10, 20

*In re Brooks*, 344 B.R. 417 at 421 (Bankr. E.D.N.Y 2006)...............................13

*In re Duke,* 345 B.R. 806 (Bankr. W.D. Ky. 2006) .........................................20

*In re Erwin*, 25 B.R. 363  (Bankr., Minn. 1982)............................................11

*In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006)........................................4, 9

*In re Hoffman*, 359 B.R. 163 (Bankr. E.D. Mich. Dec. 29, 2006)....................20

*In Re Kerwin,* 996 F.2d 552 (2nd Cir. 1993) ..................................................11

*In re Long*, 2006 WL 2090246 ........................................................................9

*In re Mendoza*, 16 B.R. 990, 993 (Bankr. S.D. Cal. 1982)...............................24

*In re Morales*, 359 B.R. 211 (Bankr. N.D. Ill. Jan. 11, 2007) .........................20

*In re O'Brien*, 318 B.R. 258................................................................................1

*In re Particka,* 355 B.R. 616 (Bankr. E.D. Mich. 2006)............................9, 20, 23, 24, 25

*In Re Quevedo*, 345 B.R. 238, 244 (Bankr. S.D. Calif. 2006)...........................6

*In re Trejos*, 352 B.R. 249 (Bankr., Nev. 2006) .............................................17

*In re White*, 169 B.R. 526 (Bankr. WDNY 1994) ...........................................11

*In re White*, 282 B.R. 418 (Bankr. N.D. Ohio 2002).......................................21

Page

*Kuehner v. Irving Trust Co.*, 299 U.S. 445 (1937) ........................................................17

*Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935) ..................................16

*Pennsylvania Department of Public Wealth v. Davenport*, 495 U.S. 552 110 S. Ct. 2126, 109 L. Ed. 2nd 588 ..........................................................................................19

*Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, _____ U.S. _____, 127 S. Ct. 1199, _____ L. Ed. 2d _____ (2007)..............................7, 13, 23

*United States v. Security Indus. Bank*, 459 U.S. 70, 81, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) ..............................................................................................................18

*Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 ............................................................................................................14

**Federal Statutes**

11 U.S.C. § 1325 ..........................................................................................................20

11 U.S.C. § 502(b) ...................................................................................................14, 15

11 U.S.C. § 506(a) ...................................................................................................23, 24

11 U.S.C. §502 .............................................................................................................23

11 U.S.C. Section 502(b) ...............................................................................................19

28 U.S.C. § 157 ..............................................................................................................1

28 U.S.C. §158(a)(1) .......................................................................................................1

code sections 9-610 to 9-624 .........................................................................................25

WL 625272 11 U.S.C. §506(a) ........................................................................................23

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Pursuant to 28 U.S.C. §158(a)(1), the district court has jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in cases referred to bankruptcy judges under 28 U.S.C. § 157.  This appeal is from a final order of a judge of the U.S. Bankruptcy Court for the Southern District of New York, denying appellant Ford Motor Credit Company's objection to a Chapter 13 Plan and thus denying Ford Motor Credit Company an allowed unsecured claim.

## STATEMENT OF THE ISSUE PRESENTED

Did the Bankruptcy Court err in holding that the 2005 amendments to Section 1325 of the Bankruptcy Code permits a Chapter 13 debtor to surrender vehicular collateral in full satisfaction of the claim as part of debtor's Chapter 13 Plan, thereby depriving the creditor of an unsecured claim for the deficiency resulting from the disposition of the collateral.

## STATEMENT OF THE APPLICABLE STANDARD FOR REVIEW

The bankruptcy judge's conclusions of law are subject to de novo review on appeal, and the district court may thus substitute its own legal conclusions for those of the bankruptcy court. Bankruptcy Rule 8013.   *In re O'Brien*, 318 B.R. 258 (S.D.N.Y. 2004); *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999).  There is no factual dispute in this case.

## STATEMENT OF THE CASE

### A.    Nature of the Case and Proceedings Below

This is a case under Chapter 13 of the Bankruptcy Code, filed by the Debtor, Baldassarre Pinti (the "Debtor"), on March 24, 2006, in the United States Bankruptcy Court for the Southern District of New York, Poughkeepsie Division.

The Debtor filed an amended Chapter 13 Plan on December 15, 2006, wherein the Debtor proposed to surrender a vehicle to the secured creditor, Ford Motor Credit Company ("Ford Credit"), in full satisfaction of the creditor's claim. Ford Credit filed an objection to confirmation of Debtor's Amended Chapter 13 Plan, alleging that the Bankruptcy Code did not authorize the Debtor to surrender the vehicle in full satisfaction, thus depriving Ford Credit of an unsecured claim for any deficiency resulting from disposition of the vehicle.

On March 13, 2007, the bankruptcy judge issued a Memorandum Decision denying Ford Credit's objection (Bankruptcy Court Docket No. 45). On March 15, 2007, the bankruptcy judge issued an Order denying Ford Credit's objection (Bankruptcy Court Docket No. 47). Ford Credit filed its Notice of Appeal on March 23, 2007 (Bankruptcy Court Docket No. 50).

### B.    Statement of Facts

There is no factual dispute in this case. The following statement of facts is taken from the "Memorandum Decision On Objection to Confirmation" of the court below entered March 13, 2007 (Bankruptcy Court Docket No. 45)

On July 26, 2004 Baldassarre Pinti a/k/a Buddy Pinti purchased a new 2004 Ford F250 truck ("Vehicle") from Monroe Motors, Inc. In conjunction with the sale, Debtor executed a Retail Installment Contract which was assigned to Ford Credit.

On March 24, 2006, the Debtor filed a voluntary petition in bankruptcy under Title 11, Chapter 13 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York. Debtor's original Chapter 13 Plan made no specific reference to Ford Credit's claim or the Vehicle.

Ford Credit filed a Proof of Claim in Debtor's bankruptcy case on April 6, 2006. This Proof of Claim shows that Ford Credit is the holder of a properly perfected purchase money

security interest in the Vehicle.  At the time of the bankruptcy filing, the payoff amount of the debt was $26,763.85.

On July 25, 2006, Ford Credit filed a Motion for Relief from Automatic Stay pursuant to Section 362(d)(1) of the Bankruptcy Code, based on a default in contractual payments.  The Debtor filed no opposition to the motion.  An Order Granting Relief from the Automatic Stay was entered on August 17, 2006, permitting Ford Credit to repossess and liquidate the vehicle.

On August 23, 2006, counsel for the Debtor, pursuant to Section 502 of the Bankruptcy Code, filed a Motion objecting to the Proof of Claim filed by Ford Credit.  The Debtor's motion alleged that the Vehicle had been surrendered in full satisfaction of the debt, pursuant to Section 1325(a)(5)(C) of the Bankruptcy Code, alleged that Ford Credit is not entitled to be paid under the Plan, and requested that Ford Credit's claim be expunged.  However, the Debtor had not at that time filed an amended Plan providing for surrender of the Vehicle.

On November 2, 2006, Ford Credit filed a Response alleging that the Debtor's Plan had not proposed to surrender the collateral in full satisfaction of Ford Credit's claim and asserted that any such provision would be objectionable.  Ford Credit's position was that it is entitled to amend its Proof of Claim to show the deficiency resulting from the post-petition recovery and liquidation of the collateral as a general unsecured claim.  Ford Credit sought denial of Debtor's Objection to its claim.

At a hearing on Debtor's motion held December 12, 2006, the Court suggested that the Debtor file an amended Chapter 13 Plan to properly bring the issue before the Court, and adjourned the hearing on Debtor's motion and Ford Credit's opposition thereto to January 30, 2007.  The Court also directed the parties to file supplemental memoranda of law.

3

On December 15, 2006, Debtor filed an Amended Chapter 13 Plan which proposed to surrender the Vehicle in full satisfaction of Ford Credit's claim. Ford Credit filed an Objection to Confirmation of Amended Chapter 13 Plan restating its position and including the argument that the proposal is violative of the Fifth Amendment to the U.S. Constitution.

Ford Credit has also filed an Amended Proof of Claim for an unsecured claim in the amount of $10,898.00 resulting from the sale of the Vehicle and application of the sale proceeds to the contractual balance.

On March 13, 2007 the Honorable Cecilia G. Morris issued a Memorandum Decision on Objection to Confirmation overruling Ford Credit's objection to Debtor's amended plan. In reliance on a line of cases commencing with *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), the bankruptcy judge held that, by virtue of the 2005 amendments to the Bankruptcy Code, Ford Credit's claim was deemed fully secured, and thus the Debtor could surrender the Vehicle in full satisfaction of the claim without having to provide for payment of any resulting deficiency as an unsecured claim in the Chapter 13 Plan. This appeal followed.

### ARGUMENT

#### Summary

The 2005 amendments to the Bankruptcy Code entitled the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005" (referred to as "BAPCPA") upon which the bankruptcy court relied does not contain any provision deeming Ford Credit's claim as fully secured. There is similarly no provision in the BAPCPA authorizing a Chapter 13 Debtor to surrender a vehicle in full satisfaction of a secured creditor's claim. This court will not find any provision in the Bankruptcy Code providing for the disallowance of such creditor's unsecured claim for the deficiency resulting from disposition of the vehicle. Nowhere in the Bankruptcy

Code, or in the legislative history of BAPCPA, did Congress evince an intention to enact the radical departure from existing law and practice embodied in the bankruptcy judge's decision.

Under existing law and practice in the non-bankruptcy context, when a debtor defaults under a security agreement covering a vehicle, the secured party is authorized to take possession of the vehicle. New York Uniform Commercial Code (hereinafter "UCC") § 9-609(a)(1). The secured party is then authorized to dispose of the vehicle pursuant to UCC § 9-610(a), in a commercially reasonable manner. The secured party is required to provide the debtor with notification with respect to disposition of the vehicle. UCC § 9-611 to 9-614. If the secured party has complied with these provisions of the Uniform Commercial Code, it is entitled to apply the cash proceeds of the disposition first to the expenses of the disposition and then the satisfaction of the obligations secured. The debtor is liable for any deficiency resulting or, if there is a surplus, to receipt of the surplus. UCC § 9-615. In the event of a deficiency, the secured party is then authorized to utilize whatever collection remedies are available under state law to obtain payment.

It is well-settled that the Bankruptcy Code alters the state law remedies of the secured party respecting the deficiency. Instead of being able to sue and collect the entire amount of the deficiency from a debtor in bankruptcy, the secured creditor is limited to the filing of a general unsecured Proof of Claim for the amount of the deficiency. In that event, the secured party is paid pro rata with all other general unsecured creditors of the bankruptcy debtor, the amount of the payment determined by the property available for distribution to the unsecured creditor class.

While this established practice in bankruptcy was not the source of any abuses, certain situations where the bankruptcy debtor instead retained the vehicle were identified by Congress as constituting an abuse of the system. Specifically, under pre-BAPCPA practice, some debtors

were purchasing new vehicles on the eve of bankruptcy, financing the retail price, and then after filing bankruptcy utilizing Section 506(a) of the Bankruptcy Code to bifurcate the secured party's claim into a secured and unsecured portion.[1] This "cram down" practice allowed debtors to substantially write down the amount that they were required to pay for and retain the vehicle.[2]

In order to cure this abuse,[3] Congress enacted, as part of BAPCPA, a new provision of Section 1325, which is variously referred to as the "Hanging Paragraph" (because it has no alpha numeric designation), or the Anti-Bifurcation Paragraph. This new provision clearly prevents a debtor from using "cram down" with respect to vehicles acquired by the debtor within 910 days of the filing of the bankruptcy petition. Congress thereby eliminated the abuse which it sought to remedy.

Congress apparently did not anticipate that some bankruptcy judges would seize upon certain arguable flaws in the legislation to reach the result adopted by the bankruptcy court below. However, a growing number of bankruptcy courts have rejected such distortion of the Bankruptcy Code and have concluded that the Hanging Paragraph does not permit surrender of a motor vehicle in full satisfaction of the secured party's claim and the resulting denial of the secured party's right to an unsecured claim for any deficiency.

---

[1]  Section 506 provides as follows: (a)(1)  An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or in a plan affecting such creditor's interest.

[2]  For example, a debtor who purchased a new vehicle for $25,000 and financed the entire purchase price a month prior to filing Chapter 13 could "cram down" the vehicle to its now-used value, such as $20,000, and only be compelled to pay the creditor $20,000 to retain the vehicle, leaving the $5,000 balance to be paid as a general unsecured claim at, for example, 10 cents on the dollar.

[3]  See discussion of this abuse set out in *In Re Quevedo*, 345 B.R. 238, 244 (Bankr. S.D. Calif. 2006); H.R. Rep. 105-540, 105th Cong., 2nd Sess. Page 109; H.R. Rep. 106-123(1), 106th Cong., 1st Sess., page 168.

More significantly, the March 20, 2007, decision by the United States Supreme Court in *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, _____ U.S. ____, 127 S. Ct. 1199, _____ L. Ed. 2d _____ (2007) (hereinafter "*Travelers*"), issued one week after the ruling by the bankruptcy court below, illustrates the fatal flaws in the *Ezell* analysis, adopted by the bankruptcy judge. The *Travelers* decision rejects the fundamental premises of *Ezell* and the bankruptcy court below.

The decision below is in error. This Court is thus urged to reverse it.

## POINT I

**THE BANKRUPTCY COURT ERRED IN HOLDING THAT THE 2005 AMENDMENTS TO SECTION 1325 OF THE BANKRUPTCY CODE PERMITS A CHAPTER 13 DEBTOR TO SURRENDER VEHICULAR COLLATERAL IN FULL SATISFACTION OF FORD CREDIT'S CLAIM AS PART OF DEBTOR'S CHAPTER 13 PLAN, THEREBY DEPRIVING FORD CREDIT OF AN UNSECURED CLAIM FOR THE DEFICIENCY RESULTING FROM DISPOSITION OF THE VEHICLE.**

In Chapter 13, the Debtor is required by Section 1321 to file a Plan conforming to Section 1325 by which the Debtor proposes to pay creditors. With respect to an allowed secured claim, such as that of Ford Credit, the Debtor has three (3) options under Section 1325(a)(5):

(A)    the debtor and the secured party may agree on the Plan's proposed treatment of the secured party's claim, resulting in the secured party accepting the Plan (Section 1325(a)(5)(A));

(B)    the Plan provides for payment of the secured party's claim, consistent with the requirements of the Bankruptcy Code (Section 1325(a)(5)(B)); or

(C)    the debtor may surrender the collateral to the secured party (Section 1325(a)(5)(C).

With respect to the options under 1325(a)(5)(A) (consensual resolution) and 1325(a)(5)(C) (surrender), the provisions are the same under BAPCPA as they were pre-BAPCPA. The option under 1325(a)(5)(B) - payment for the vehicle - was modified by BAPCPA in certain ways not relevant to this case.

The "Hanging Paragraph", which is inserted after Section 1325(a)(9), provides as follows:

> For purposes of paragraph (5), [referring to the above-cited Section 1325(a)(5)] section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consist of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Creditors receiving treatment pursuant to this new paragraph have been identified as "910 creditors" and their claims as "910 claims" in the reported decisions. Under the undisputed facts of the case, Ford Credit is a "910 creditor" holding a "910 claim" as to the Vehicle in issue. No issue was raised below challenging Ford Credit's claim as an allowed secured claim under Section 1325(a)(5).

Prior to BAPCPA and the enactment of the Hanging Paragraph, Section 506(a) (now Section 506(a)(1)), was the source of the Chapter 13 Debtor's ability to "cram down" the vehicle lender where the debtor elected the option of Section 1325(a)(5)(B) - to retain and pay for the vehicle at a reduced cost. As noted above, Congress deemed this practice to be abusive in certain instances. Thus, the effect of the Hanging Paragraph is to prevent "cram down" on vehicles acquired within 910 days of filing. Vehicles acquired more than 910 days before filing are still subject to cram down.

With respect to the option of Section 1325(a)(5)(C) - surrender of the vehicle - and the impact of the Hanging Paragraph, two lines of cases have emerged.  The first line of cases originates from the decision in *In re Ezell*, <u>supra</u>[4] and permit surrender in full satisfaction of the creditor's claim. The bankruptcy judge's decision below is allied with *Ezell*.  The second line of cases, which hold that surrender in full satisfaction is not an option and that the creditor's unsecured claim for any deficiency is determined by state law, are exemplified by *In re Particka*, 335 B.R. 616 (Bankr. E.D. Mich. 2006).  The *Ezell* reasoning is fatally flawed and leads to absurd results.  The *Particka* line of cases is the better view, and is in harmony with established bankruptcy practice and relevant decisions of the Supreme Court, most recently the decision in *Travelers*.

### A.    The Bankruptcy Court Erred in Determining that Section 506 is the Sole Source of Ford Credit's Deficiency Claim.

The basis for the conclusion reached by the bankruptcy court, and the fundamental premise of *Ezell*, is that Section 506 is the <u>sole</u> source of Ford Credit's right to a deficiency claim.[5]  From this starting point, the *Ezell* rationale is that the Hanging Paragraph's elimination of Section 506 from application to 910 claims bars any deficiency component.  If this premise fails, which it clearly does, the entire *Ezell* line of cases fall with it.  Since a deficiency claim can be and is determined by reference to state law, as the Supreme Court in *Travelers* unequivocally indicates, *Ezell* and the decision below cannot stand.

---

[4]  As of this writing, the issue in *Ezell* is on direct appeal from the Bankruptcy Court for the Eastern District of Tennessee to the U.S. Court of Appeals for the Sixth Circuit; the petition for direct appeal in the case of *In re Long*, 2006 WL 2090246 (Bankr. E.D. Tenn 3/116/06) was granted September 25, 2006.  Sixth Circuit Case No. 06-0505.

[5]  "Ford Credit cannot have an unsecured claim in this case because there is no way to determine whether a deficiency claim exists except by reference to Section 506(a), which determines the unsecured portion of a claim based on the value of the secured claim".  <u>Memorandum Decision</u>, p. 12.  "The starting point for allowance of a deficiency claim is Section 506(a)(1)".  <u>Memorandum Decision</u>, p. 16.

The bankruptcy court in *Ezell* determined that Section 506 was critical to the surrender scenario under pre-BAPCPA practice. The court then concluded that since the Hanging Paragraph prohibits the application of Section 506 to each of the debtor's options under Section 1325(a)(5), the claim of the creditor to whom the collateral is surrendered under Section 1325(a)(5)(C) cannot be divided into secured and unsecured (i.e. deficiency) portions. Thus, posits the court in *Ezell*, a claim within the scope of the Hanging Paragraph is "fully secured". Consequently, since the creditor is deemed fully secured, surrender satisfies the creditor's claim in full. *Ezell* theorized that to do otherwise would allow the secured creditor to "bifurcate" its claim into secured and unsecured components, contrary to the mandate that Section 506 not apply. The bankruptcy court below adopted the *Ezell* premise.

A number of bankruptcy courts are considered to have accepted the *Ezell* premise that a claim subject to the Hanging Paragraph is deemed "fully secured" for all purposes, cannot have an unsecured component, and consequently that surrender satisfies the claim in full. Of these decisions, many adopt *Ezell* without any significant independent analysis; in some surrender was not an issue. Most of the decisions are listed in *In Re Blanco*, ____ B.R. ____, 2007 WL 733973 (Bankr. N.D. Ill.).

The initial fatal flaw in the *Ezell* line of reasoning is that §506 was critical in surrender scenarios under pre-BAPCPA law and thus would be critical to the post-BAPCPA situation. A review of pre-BAPCPA decisions, including those cited by the *Ezell* court, demonstrate that Section 506 had little, if anything, to do with the deficiency claim following surrender and that the matter was instead dealt with under state law, most notably the Uniform Commercial Code. The following observation by the Second Circuit of Court of Appeals in *In Re Kerwin*, 996 F.2d

552 (2nd Cir. 1993), dealing with the identical surrender provision set forth in Section

1225(a)(5)(C), is as follows:

> When the debtor elects to surrender the collateral under (C), the
> secured creditor takes possession of the property and sells it in
> accordance with non-bankruptcy law.  If a sale produces a
> deficiency, the creditor may assert the amount of such deficiency
> in an unsecured claim against the debtor's remaining assets
> [citation omitted].  Thus even a creditor who receives its entire
> collateral under (C) is not guaranteed its claim will be satisfied to
> the last penny because any outstanding deficiency will, upon
> liquidation of the estate, entitle the creditor only to its <u>pro rata</u>
> share of those payments made to all unsecured creditors.  <u>Id</u>. At
> 557

In the case of *In re White*, 169 B.R. 526 (Bankr. WDNY 1994), the Court noted, that

where, as in the matter at bar, a Motion for Relief is properly made and granted "it is usually

explicitly recognized (and always implicitly recognized), that the grant of the motion relegates

the parties to their state law rights." <u>Id</u>. at 129.  The Court determined:

> This Court holds that once the §362(d) Order lifting stay was
> granted, any and all deficiencies as to the claim secured by that
> collateral were (after sale) rendered unsecured, and the lender was
> obligated to advise the Chapter 13 debtors of the result of the sale
> so that the creditor's claims and the Plan payments could be
> adjusted accordingly.

Nowhere in the *White* decision, which was cited in *Ezell* for the proposition that Section

506 is integral to the surrender situation, did the court even make reference to Section 506.

Rather, as noted by the Court in *In re Erwin*, 25 B.R. 363  (Bankr., Minn. 1982), collateral

surrendered under 1325(a)(5)(C) is controlled by the applicable provisions of the Uniform

Commercial Code with the result that the holder of an allowed secured claim would be entitled to

an allowed unsecured claim for the amount remaining due after an appropriate disposition of the

surrendered collateral.

These decisions demonstrate, and the practicalities of the situation illustrate, that the surrender of a motor vehicle in a Chapter 13 case would never implicate Section 506, either pre- or post-BAPCPA.  If the vehicle in this case did not involve a 910 claim, but the Debtor nevertheless proposed to surrender it, the court would not undertake a Section 506(a)(1) analysis to determine the secured and unsecured portions of  Ford Credit's claim.  This is because only the deficiency (if any) resulting from the UCC-mandated disposition of the vehicle, and the resulting unsecured claim, is of any interest to the Chapter 13 Plan.

Similarly, Section 506 cannot be viewed as critical to the debtor's election of the first option, Section 1325(a)(5)(A), which is essentially that the debtor and secured party agree to the treatment of its claim.  If the rationale of *Ezell* was applied to an agreement under Section 1325(a)(5)(A), a secured creditor holding a 910-claim would be prohibited from agreeing with the debtor to the bifurcation of its claim.   It is only when one considers that Section 506 is not integral to such an agreement, the same as it is not integral to the surrender of collateral, that such an agreement between the debtor and the creditor would be acceptable.

Section 506 is not a definitional section and does not dictate whether a creditor is secured or unsecured.   A creditor's secured status is defined by applicable state law, as *Travelers* teaches, not the Bankruptcy Code.  Section 506 merely dictates whether or not a claim may be altered.

> The Court's interpretation of Section 506(a) as strictly a method of valuing an allowed secured claim, rather than a definitional provision, is also consistent with its holding in *Dewsnup v. Timm,* where the court found that the term, "allowed secured claim" in section 506(d) was not defined by section 506(a).  The *Dewsnup* court held that a claim was an "allowed secured claim" because it was allowed under Section 502 and secured by a lien.

*In re Brooks*, 344 B.R. 417 at 421 (Bankr. E.D.N.Y 2006) *citing Dewsnup v. Timm*, 502 U.S. 410, 417 (1992).

The squabble in the reported cases and noted in the decision below over whether Section 506 was or was not critical to surrender under pre-BAPCPA practice or whether Section 506 is or is not definitional is essentially irrelevant. The real question is whether the secured party's deficiency claim can be determined by resort to law other than Section 506. The answer, as *Travelers* teaches, is unequivocally in the affirmative.

The *Ezell* line of cases virtually ignore Section 502, which is the source for allowance or disallowance of claims. In *Travelers*, the Supreme Court noted that under Section 502, a claim or interest is "deemed allowed", and shall be allowed unless the claim, or some portion of it, falls within the exceptions enumerated in Section 502(b). 127 S. Ct. 1199, 1204.[6] The court also took the opportunity to reiterate the long-standing rule that claims are determined by reference to state law:

> [5] Indeed, we have long recognized that the " 'basic federal rule" in bankruptcy is that state law governs the substance of claims, Congress having "generally left the determination of property rights in the assets of a bankrupts' estate to state laws." *Ibid.* [quoting *Butner v. United States*, 440 U.S. 48, 57, 54, 99 S. Ct. 914, 59 L.Ed.2d. 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim"-which the Code itself defines as a "right to payment,' 11 U.S.C. 101(5)(A)- it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed

---

[6] The Court summarized those exceptions as follows: "The exceptions apply where the claim at issue is "unenforceable against the debtor … under any agreement or application of law," § 502(b)(1); "is for unmatured interest", § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, § § 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of … credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was brought to the court's attention through an untimely proof of claim, § 502(b)(9).

differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S.Ct. 914; accord, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (19476) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

Section 506, in those situations where it applies, apparently constitutes the "overruling federal law" to which the Supreme Court refers. Under state law, a debtor cannot "cram down" a creditor by forcing the creditor to accept payment in full only for a lesser "value" of a motor vehicle, and pennies on the dollar for the balance. Under state law, the creditor is entitled to payment in full, by liquidating the collateral and suing the debtor for the deficiency. Where it applies, Section 506 forces the creditor to accept what he could not be forced to accept under state law.

But where an "overriding federal law" such as Section 506, does not apply, the Supreme Court has clearly left the field to state law:

> Consistent with our prior statements regarding creditors' entitlements in bankruptcy, see, *e.g. Raleigh*, 530 U.S., at 20, 120 S.Ct. 1951, we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U.S.C. § 502(b).

Id. at 1206.

Section 502, dealing with the allowance or disallowance of claims, contains no express, or even implied provision disallowing Ford Credit's unsecured deficiency claim. There is no question but that Ford Credit's deficiency claim is enforceable under state law. Since *Travelers* directs that this claim be allowed, *Ezell* and the bankruptcy court's decision below are fundamentally at odds with the directive of the Supreme Court.

If, as is clear, the determination of whether a claim in bankruptcy is secured can be made by reference to state law, then the absence of Section 506 is not critical. If, as is also apparent, Section 506 is not implicated where collateral is surrendered, then an unsecured claim can exist resulting from state law disposition and deficiency proceedings. Thus, based on *Travelers*, the first premise of *Ezell*, that Section 506 is critical to the surrender of collateral, fails.

### B. The Hanging Paragraph Does Not Deem Ford Credit's Claim to be Fully Secured.

The second flaw in the *Ezell* line of reasoning is that a 910-claim is deemed by the Hanging Paragraph to be a fully secured claim for all purposes. The court in *Ezell* concluded that, by eliminating Section 506 from 910 claims, a creditor holding such a claim "is fully secured for the amount of its claim", which is, in actuality, the debt owed. *Ezell* at 340. Consequently, reasons *Ezell*, the claim is fully secured for surrender purposes, and a deficiency cannot exist.

This is, of course, a fiction, which the bankruptcy court below erroneously accepts as simply "imposed by the plain meaning of the Hanging Paragraph". Memorandum Decision, p. 11. As the bankruptcy court noted, the Bankruptcy Code contains a number of fictions. (Id.) That is true, but as the court points out, they are all statutorily created fictions. This particular fiction is found nowhere in the Bankruptcy Code.

In this case, Ford Credit's claim is $26,763.85 against a vehicle which the Debtor alleges to be worth $10,400.00. By eliminating Section 506 from consideration, Congress merely prevented the Debtor from retaining the vehicle and bifurcating the claim into secured and unsecured portions in his Chapter 13 Plan; the Hanging Paragraph does not "deem" the under-secured 910-claim to be "fully secured". Congress certainly knows how to "deem" an under-secured claim to be fully secured, as evidenced by the provisions relating to the Section 1111(b)

election.  See Section 1111(b)(2).  Congress could have simply mimicked Section 1111(b)(2) by providing that, with respect to a claim satisfying the 910-claim criteria, "then notwithstanding Section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed."  Congress did not do so, and there is nothing in the legislative history to suggest that it so intended.

As *Travelers* teaches, claims are determined by reference to state law, unless otherwise provided by the Bankruptcy Code.  There is no support, either in state law or the express provisions of the Bankruptcy Code, deeming Ford Credit's claim to be "fully secured".  The *Ezell* rationale on this second point fails.

### C.    The Bankruptcy Court's Decision Raises Serious Constitutional Issues.

Ford Credit does not contend that the statute in issue as written by Congress and as construed in the *Particka* line of cases raises any constitutional issues.  Rather, it is the *Ezell* line of cases, and the decision by the court below, which apply a construction to the relevant statutes in such a way as to implicate serious constitutional issues.  Since the Courts are to construe statutes so as to avoid serious constitutionality questions regarding a statute, the *Particka* line of cases is to be favored over those adopted by the bankruptcy court below.

The Constitutional issue under the Fifth Amendment arises from the fact that the *Ezell* line of cases completely bar the 910 creditor from an unsecured claim for the contractual deficiency arising after disposition of the collateral.  In all of the Bankruptcy Code, the 910 creditor to whom the collateral is surrendered is the only creditor to be ipso facto denied an unsecured deficiency claim.

The exercise by Congress of its bankruptcy power is subject to the commands of the Fifth Amendment.  *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935).  Nevertheless,

the Supreme Court has recognized that the Constitution does not forbid the impairment of the

obligation of contracts.  *Kuehner v. Irving Trust Co.*, 299 U.S. 445 (1937).  However, the

constitutionally permissible impairment of contracts does not reach so far as to authorize the

destruction or obliteration of contractual or state law rights.  *In Kuehner v. Irving Trust Co.,* the

Supreme Court made that very clear:

> While, therefore, the Fifth Amendment forbids the destruction of a
> contract it does not prohibit bankruptcy legislation effecting the
> creditors remedy for its enforcement against the debtors assets, or
> the measure of the creditor's participation therein, if the statutory
> provisions are consonant with a fair, reasonable and equitable
> distribution of those assets…  The question is whether the remedy
> is circumscribed and so unreasonable in arbitrational way as to
> deny due process.

Earlier in the *Kuehner* decision, the Supreme Court recognized the historical object of

the bankruptcy laws to be equitable distribution of the debtor's assets amongst its creditors.

The bankruptcy statutes as construed by the *Ezell* line of cases are in direct opposition to

the foregoing mandates of the Supreme Court.  It is unreasonable and arbitrary to deny the 910

creditor with a deficiency claim while, for example, at the same time allowing the claims of

recipients of fraudulent transfers, preferences, or insiders who have damaged the debtor to

participate in the distribution of the debtor's assets.[7]  It is contrary to the Supreme Court's dictate

in *Travelers* to construe a statute in such an arbitrary way as to obliterate the historically-

recognized right of a secured creditor to file an unsecured claim for a deficiency after disposition

of the collateral.

The few bankruptcy courts which have addressed the constitutional issues have, with one

known exception, cavalierly dismissed it as being "without merit" without any in-depth analysis.

However, the bankruptcy court in *In re Trejos*, 352 B.R. 249 (Bankr., Nev. 2006) doubted that

---

[7]  See Section 502(d); Section 510 on equitable subordination.

Section 506(a) provides the exclusive definition of allowed secured claim in Chapter 13.  The

bankruptcy judge continued (at 262-263):

> This doubt ripens into certainty when laid next to the undeniable
> fact that, as with absolute priority, there is also a constitutional
> dimension to secured claims.  Under the fifth amendment, no law
> can effect the taking of property without just compensation, and
> the Court has strongly indicated that the Bankruptcy Code is to be
> construed so as to preserve existing rights of secured creditors.
> *United States v. Security Indus. Bank*, 459 U.S. 70, 81, 103 S.Ct.
> 407, 74 L.Ed.2d 235 (1982) ("No bankruptcy law shall be
> construed to eliminate property rights which existed before the law
> was enacted in the absence of an explicit command from
> Congress.").

It is a cardinal principal of statutory construction that where one possible construction of

the statute raises serious constitutional issues, such construction is to be avoided in favor of one

which has no constitutional implications.  *United States v. Security Industrial Bank*, 459 U.S. 70,

103 S.Ct. 407, 74 L.Ed.2d 235 (1982).  For this additional reason, the *Particka* line of cases is

more preferable and should be followed.

> **D.    The *Travelers* Decision Rejects the *Ezell* Rationale on Every
> Significant Point.**

The precise issue in the *Travelers* case was whether federal bankruptcy law precluded an

unsecured creditor from recovering contractual attorneys' fees as an allowed claim in the estate,

which had previously been disallowed by Ninth Circuit precedent.  The Supreme Court took the

opportunity to discuss the issue of claims generally in bankruptcy.

Justice Alito, writing for a unanimous court, observed that the court had "long recognized

that the basic federal rule in bankruptcy is that state law governs the substance of claims" citing

*Butner v. United States*, 440 U.S. 48 99 S. Ct. 914 59 Ld. 2nd 136 (1979).  The Court reiterated

the statement in *Butner* that what claims of creditors are valid and its subsisting obligations

against the bankrupt is a question which, in the absence of overruling federal law, is to be

determined by reference to state law.  The Court went on to state as follows:

> "Consistent with our prior statements regarding creditors
> entitlements in bankruptcy… we generally presume that claims
> enforceable under applicable state law will be allowed in
> bankruptcy unless they are **expressly** disallowed.

See, 11 U.S.C. Section 502(b).  *Travelers 127 S.Ct. at 206.*

Since Section 502, which deals with the allowance or disallowance of claims contains no

provision disallowing the deficiency claim of the 910 creditor, under the authority of the

*Travelers* decision, the bankruptcy courts may not judicially enact such a provision.  Moreover,

since the source of Ford Credit's deficiency claim is clearly state law, specifically the Uniform

Commercial Code, the bankruptcy courts cannot reasonably set up Section 506(a) as being the

source of the deficiency claim, and then erect a bar to the deficiency claim simply because

Section 506(a) does not apply to the 910 Creditors claim.

The *Travelers* case is also instructive on whether the BAPCPA can be read to alter past

bankruptcy practice, as is sought to be achieved by the *Ezell* lines of cases.  The Court stated as

follows:

> We will not read the Bankruptcy Code to erode past bankruptcy
> practice absent a clear indication that Congress intended such a
> departure (*Pennsylvania Department of Public Wealth v.
> Davenport*, 495 U.S. 552 110 S. Ct. 2126, 109 L. Ed. 2nd 588
> ]1990]).

*Travelers* at 1206-1207.

In light of the pronouncements by the Supreme Court in the *Travelers* Decision, it is

doubtful that the *Ezell* line of cases will survive what appears to be an inevitable march to the

Supreme Court.

E.    **The Decisions Rejecting *Ezell* are More Rational and are in Harmony with Supreme Court Precedent.**

A growing number of courts have rejected the *Ezell* analysis, on the basis that Section 506 is not the source of the secured party's deficiency claim.[8]  They hold that the surrender of a 910 vehicle does not result in full satisfaction of the claim, and thus the creditor is allowed to seek whatever state law remedies may be available, including the right to a deficiency as an unsecured claim in the Plan, a holding in accord with the Supreme Court's position articulated in *Travelers*.  These decisions embody the more rational approach, and the court is urged to follow them.

The leading case rejecting the *Ezell* approach is recognized to be *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006).  *Particka*, and its line of cases hold that Section 506 is not applicable where collateral is surrendered.  11 U.S.C. § 1325 (a)(5)(C) does not provide, as *Ezell* urges, that a surrender of the subject vehicle is in full satisfaction of the claim.   Where the debtor proposes to surrender the collateral to the secured creditor

> [N]o real use of the bifurcation under §506(a) is needed.  After surrender and liquidation of the collateral, the remaining unpaid balance of the underlying debt would be an unsecured claim potentially allowable under §502.

*In re Blanco*, *supra*.

---

[8]   These decisions are as follows:  *See Dupaco Cmty; Credit Union v. Zehrung (In re Zehrung)*, 351 B.R. 675 (W.D. Wis. 2006); *In re Duke*, 345 B.R. 806 (Bankr. W.D. Ky. 2006); *Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006); *In re Hoffman*, 359 B.R. 163 (Bankr. E.D. Mich. Dec. 29, 2006); *In re Morales*, 359 B.R. 211 (Bankr. N.D. Ill. Jan. 11, 2007); *In re Clark*, No 06-11943, 2007 WL 625272 (Bankr. N.D. Miss. Feb. 23, 2007).  *In re Blanco*, ___ B.R. ___, 2007 WL 733973 (Bankr. N.D. Ill.); *In re Green*, Case No. 06-12159 (Bankr. S.D. Ala. 12/29/06); *In re Leaks*, Case No. 06-69445 (Bankr. N.D. Ga. 12/26/06).  In addition, the United States Bankruptcy Court for the Northern District of Georgia, Rome Division, issued a joint Order on December 13, 2006 in *In re Slocum*, Case No. 06-41162-MGD, and *In re Silvers*, Case No. 06-41198-MGD, wherein the Court held that for the reasons enumerated in *Zehrung* and *Patricka*, "the Court will not confirm a debtor's plan, over the objection of a secured creditor, where, as here, a debtor proposes to surrender collateral in full satisfaction of a claim … and the parties agree that the collateral is worth less than the amount of the debt secures."

*Particka* undertakes a thorough analysis of the issue and of the rationale supporting the

*Ezell* approach.  The Court also engaged in a thorough analysis of pre- and post-BAPCPA law

and considered the term "surrender" and its meaning in the context of Section 1325(a)(5)(C).

Finding that the term "surrender" was not defined in the Code, the Court looked to *In re White*,

282 B.R. 418 (Bankr. N.D. Ohio 2002), a pre-BAPCPA case.

> Surrender in that context is perhaps best viewed as the
> relinquishing of any legal claim of the debtor and, once the plan is
> confirmed, *of the debtor's bankruptcy estate* to the collateral.  It
> functions as both the debtor's consent to relief from stay and with
> respect to real  property and personal property that is subject to
> certificates of title, estoppel of the right to defend in any
> foreclosure proceeding or a prospective confession of judgment in
> any such case.

*Particka* at 624, quoting *In re White* at 422.  The *Particka* court reasoned that, since the Section

1325(a)(5)(C) use of the term "surrender" was not changed with the amendments to the Code,

the estate no longer maintained an interest in the collateral.

> If the estate has no interest in the property that secures a claim,
> there is no reason to use the valuation process of §506 to determine
> the amount of the secured claim.  Once the estate has no interest in
> the property, a secured creditor is free to foreclose upon its security
> interest under applicable non-bankruptcy law and apply the
> proceeds of sale of the collateral to its claim.  **The creditor, of
> course, still retains its right to an allowed unsecured deficiency
> claim against a debtor under §502 of the Bankruptcy Code if
> the debtor remains liable for the deficiency under applicable
> non--bankruptcy law.**  In other words, the bifurcation process of
> §506 does not, and never did, apply to determine a secured and
> unsecured portion of a secured creditor's allowed claim where the
> estate  does not have an interest in the property securing such
> claim.  Once a debtor surrenders property to a secured creditor,
> there is no longer any reason to apply §506(a) to determine the
> allowed amount of such creditor's secured claim because the estate
> no longer holds an interest in the property.  [emphasis added]

Id. at 624.

Thus, the *Particka* decision removes the major premise of the *Ezell* approach that Section 506 is inextricably linked to surrender.  The decision notes that it would be "tempting" to follow the *Ezell* trend, but that

> . . . on close inspection, those cases seem to proceed from the incorrect assumption that it is only somehow because of § 506 that an under-secured 910 creditor has a right to pursue a deficiency claim.

*Particka*, at 625.

Rather, the *Particka* court stated the following:

> By rendering § 506 inapplicable to § 1325(a)(5), the hanging paragraph did work a change in the law with respect to 910 creditors, but only with respect to debtors who retain the collateral securing their debt.  Because § 506 does not apply to a vehicle surrendered under § 1325(a)(5)(C), the specific direction of the hanging paragraph that § 506 no longer apply to § 1325(a)(5) does not cause any change in the outcome where a debtor surrenders a vehicle under § 1325(a)(5)(C) to a 910 creditor and the estate no longer retains an interest in such vehicle. . .  Prior to BAPCPA, § 506 did not bifurcate a secured creditor's claim upon surrender, nor does it do so post-BAPCPA.

*Particka* at 624-625.

The Bankruptcy Court in *In Re Duke* determined that, since "surrender in full satisfaction" effects a release of the creditor's deficiency claim in derogation of the creditor's state law remedies, the intent of Congress to enact an "anti-deficiency" provision should be manifestly clear, which it is not.  The court concluded

> Absent clear legislative intent on the face of the statute, the surrender of a vehicle meeting the requirements of the "hanging paragraph" does not result in a full satisfaction of the Creditors' claims, leaving to them whatever state law remedies are available to them, including pursuit of a deficiency as an unsecured claim during the Chapter 13 proceeding.

*Duke,* at 809.

This observation by the *Duke* court is in harmony with *Travelers*. It is undisputed that, pre-BAPCPA, a creditor in Ford Credit's position had the acknowledged right to file an unsecured claim for a deficiency. In that regard, the Supreme Court in *Travelers* reiterated the rule as follows:

> We will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure [citation omitted].

127 S.Ct. at 1206.

Unlike the *Ezell* line of cases, which view §506 as the starting point for the allowance of a deficiency claim, the *Particka* lines of cases recognize the source for the allowance of a claim as 11 U.S.C. §502. Section 506(a) applies by its terms only to "an allowed claim of a creditor secured by a lien on the property *in which the estate has an interest…" In re Clark*, ___ B.R. ___, 2007 WL 625272 11 U.S.C. §506(a). As the estate ceases to have an interest in the vehicle upon disposition following surrender, Section 506 is not implicated at all. Section 506 is not a definitional section and does not dictate whether a creditor is secured or unsecured. A creditor's secured status is defined by applicable state law, not the Bankruptcy Code, as *Travelers* directs.

In considering the interplay between §506(a) and §1325(a)(5)(C), the Court in *In re Morales*, No. 06 B 9886, 2007 WL 92414 (Bankr. N.D. Ill. 2007) adopted the rationale of *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006) and determined

> if a debtor surrenders the vehicle, the interests of the parties in the collateral and the impact of §506 changes. Section 506(a) applies only to "an allowed claim of a creditor secured by a lien on the property in which the estate has an interest…"
>
> 11 U.S.C. § 506(a). If a confirmed Chapter 13 plan provides for surrender of a vehicle under §1325(a)(5)(C), the estate no longer has an interest in the vehicle…. When … the debtor surrenders the vehicle and the estate no longer has an interest

Section 502 was amended by BAPCPA, however it was not amended to disallow a deficiency claim resulting from the surrender of collateral.  Had Congress intended such a result, it certainly could have included language effecting such change. *In re  Particka,* supra; *In re Duke, supra.  See In re Mendoza*, 16 B.R. 990, 993 (Bankr. S.D. Cal. 1982) (confirming the long-established rule of statutory construction that in a general revision by codification the revised sections will be presumed to bear the same meaning as did the original sections, unless an intent to change the meaning is clearly, and indubitably manifested.) This is in accord with *Travelers*.

The Court in *In re Clark,* ___ B.R. ___, 2007 WL 625272 (Bkrtcy. N.D. Miss. Feb. 23, 2007), provides a compelling example of how the debate surrounding the Hanging Paragraph has evolved in relation to the interpretation of § 506 and whether it is the source for the determination of a deficiency claim.   Overturning its earlier ruling in *In re Hollis*, (Bankr. N.D. Miss. No. 06-11256) (Order entered October 12, 2006) which had adopted *Ezell*, the bankruptcy court distinguished the *Ezell* line of cases from those  preserving the right to the deficiency claim.   Notably, the court revisited the rationale it previously adopted from *Ezell,* and recognized that its prior ruling was erroneous after consideration of the analysis adopted in *In re Particka*, 355 B.R. 616 (Bankr. E.D. Mich. 2006).  The Court, in finding that the deficiency claim remained following surrender, noted:

> Once the debtor surrenders the vehicle and it no longer is
> considered a part of the bankruptcy estate, §506 has no application.
> As such, if the secured creditor, after regaining possession, then
> liquidates the vehicle in a commercially reasonable manner, that
> creditor is entitled to file an amended claim to reflect the amount of
> the unsecured deficiency.  This deficiency must then be treated by
> the debtor in the Chapter 13 plan in the same manner as other
> unsecured  claims.  It is no longer a secured claim, nor is it a
> priority claim.  This is the identical result that would have occurred
> prior to the enactment of BAPCPA.  Once the vehicle ceases to

become a part of the debtor's bankruptcy estate, the entire dynamic of the "hanging paragraph" changes because of the language found in §506(a)(1).

*Clark, supra* at 4.   The Court further adopted the *Zehrung*, *supra*, analysis,

> First, the court observed that the phrase " 'allowed secured claim' in §1325[a](5) is used in the sense that the claim is allowed under § 502 and secured by some collateral, not in the § 506 sense of the term." (citation omitted).  The *Zehrung* court then explained that [a] creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim.  Section 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender.  Rather, when collateral is surrendered pursuant to § 1325[a](5)(C) the amount of the remaining unsecured claim is determined by state law, uniform commercial code sections 9-610 to 9-624.  The creditor's rights being unmodified by § 506, it is entitled to its state law right to liquidate the collateral and retain an unsecured claim for the balance due.  *Particka*, 355 B.R. at 624-26.

*Clark*, *supra* at 4.   *Clark* recognized the flaws in the *Ezell* line of cases which "seem to proceed from the incorrect assumption that it is only somehow because of § 506 that an undersecured 910 creditor has a right to pursue a deficiency claim."  *Clark*, *supra* at 4.

Ford Credit submits that these decisions, in particular the well-reasoned decision in *Particka*, should persuade this court to reject the *Ezell* approach, and thus the decision by the court below.

## CONCLUSION

For the reasons stated, Ford Credit respectfully urges the Court to reverse the bankruptcy court's order denying Ford Credit's objection to confirmation of the Debtors' Chapter 13 Plan, with directions that the Plan not be confirmed unless it deletes the provision for surrender of

Ford Credit's collateral in full satisfaction of the debt, and that Ford Credit's unsecured

deficiency claim be deemed allowed and paid under the Plan with the same treatment as all other

unsecured non-priority claims.

DATED:     Albany, New York          DEILY, MOONEY& GLASTETTER, LLP
           April 30, 2007            Attorneys for Ford Motor Credit Company

                            By     /s/ Martin A. Mooney_____
                                   Martin A. Mooney, Esq. (8333)
                                   8 Thurlow Terrace
                                   Albany, New York  12203
                                   Tel.:   (518) 436-0344
                                   Fax:    (518) 436-8273
                                   E-Mail:  mmooney@deilylawfirm.com