**7:07-CV-02848-SCR**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re:

      BALDASSARRE PINTI,

                 Debtor.

FORD MOTOR CREDIT COMPANY,

                 Plaintiff-Appellant,

    -against-

BALDASSARRE PINTI,

                 Defendant-Appellee**.**

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
CASE NO.: 06-35230

**BRIEF OF *AMICI CURIAE*
AMERICAN HONDA FINANCE CORPORATION,
BANK OF AMERICA, N.A.,
BMW FINANCIAL SERVICES N.A., LLC,
MANUFACTURERS AND TRADERS TRUST COMPANY,
NISSAN MOTOR ACCEPTANCE CORPORATION,
SOVEREIGN BANK and
THE NEW YORK STATE CREDIT UNION LEAGUE, INC.,**

**MILLER & MEOLA**
A Professional Corporation
Attorney for *Amici Curiae*
14 Corporate Woods Boulevard
Albany, New York 12211
Phone: (518) 465-7591

**Richard J. Miller
Rudolph J. Meola
On the Brief**

## INTEREST OF *AMICI CURIAE* AND
## PRELIMINARY STATEMENT

*Amici curiae* represent a significant portion of the automotive finance industry operating in the Southern District of New York. *Amici curiae* hope to assist the Court by providing a broad perspective on the important bankruptcy issue presented by this case. That issue is framed in the question: what type of bankruptcy claim can a 910 creditor have after a vehicle is surrendered in a Chapter 13 bankruptcy?

One view, which is that asserted by the debtor and the Lower Court, is that after surrender the 910 creditor has no claim at all, and thus, even though there is a deficiency after sale of the vehicle, the 910 creditor is denied the distribution percentage which is paid to all other unsecured creditors in the case. This is the "surrender and pay nothing" view.

Another view is that a 910 creditor has an allowed secured claim as of the filing of the bankruptcy case which is not altered by the subsequent surrender of the vehicle because the only Bankruptcy Code Section which could alter the secured claim status, 11 U.S.C. 506, was expressly made inapplicable to 910 creditors by the October 17, 2005 amendments to the Code. Because the allowed secured claim cannot be altered or reclassified without applying Code 506, surrender only impacts the secured claim by reducing the amount of the claim by the sale proceeds. The remaining balance remains on the initial claim and must be paid in order for the debtor to receive a discharge. This is the "surrender and pay all" view.

Between these polar extremes is a middle ground which is argued by appellant Ford Motor Credit Company (FMCC). Under this view, a 910 creditor is entitled to both an allowed secured claim and a contingent, unmatured and unliquidated unsecured claim. Bankruptcy Code Section 101(5)(A) expressly authorizes contingent, unmatured and unliquidated claims. After the surrendered vehicle is sold and a deficiency balance is established, the unsecured claim is no longer

contingent, it has matured and it is liquidated.  Thus, the unsecured claim may be allowed which permits the creditor to receive the same distribution percentage which all other unsecured creditors are receiving in the case.  This "middle ground" view is consistent with years of pre-BAPCPA practice.

At its core, this is a claim-allowance case.  Allowance of a claim is governed by Code Section 502.  The extreme views of "surrender and pay nothing" and "surrender and pay all" disrupt the balance between Section 502 and the confirmation provisions raising a host of interpretative difficulties.  A simple, pragmatic interpretation of the issues presented recognizes that 910 creditors are entitled to both a secured claim and a contingent, unmatured and unliquidated unsecured claim which are both allowable under Code Section 502.  If the debtor retains the vehicle and pays through the plan, the unsecured claim remains contingent, unmatured and unliquidated.  If the debtor surrenders the vehicle and a deficiency arises, the unsecured claim is present, mature and liquidated.  It is respectfully submitted that this result may be most consistent with a literal reading of the Code and most closely furthers the objectives of the several Code Sections involved.

## TABLE OF CONTENTS

**SECTION**                                                                      **PAGE NO.**

**TABLE OF AUTHORITIES** …………………………………………………..        5

**JURISDICTIONAL STATEMENT, STANDARD OF
REVIEW, CORPORATE DISCLOSURE**…………………………………….        6

**ARGUMENT**:………………………………………………………………        7

    THE VIEWS ON THE EXTREME ENDS OF THE ISSUE PRESENT
    UNNECESSARY INTERPRETATIVE DIFFICULTIES AND
    UNWARRANTED RESULTS

**POINT I**………………………………………………………………….        7

    ORIENTATION – THE NATURE AND EXISTENCE OF
    A DEFICIENCY CLAIM

**POINT II**………………………………………………………………….        9

    THE "SURRENDER AND PAY ALL" VIEW

**POINT III**………………………………………………………………        12

    THE "SURRENDER AND PAY NOTHING" VIEW

**POINT IV**………………………………………………………………….        14

    THE "MIDDLE GROUND" VIEW

**POINT V**…………………………………………………………………..        16

    THE FIFTH AMENDMENT STRONGLY MILITATES AGAINST
    THE "SURRENDER AND PAY NOTHING" VIEW

**CONCLUSION**……………………………………………………………….        21

    THE COURT SHOULD AVOID THE POLAR EXTREMES PRESENTED
    BY THE "SURRENDER AND PAY NOTHING" AND "SURRENDER AND
    PAY ALL" VIEWS IN FAVOR OF THE "MIDDLE GROUND" VIEW

## TABLE OF AUTHORITIES

**SECTION**                                                                **PAGE NO.**

11 U.S.C. 101(5)…………………………………………………...        7, 12, 13, 21
11 U.S.C. 501……………………………………………………...        14
11 U.S.C. 502…………………………………………………….....       passim
11 U.S.C. 506……………………………………………………...        9, 12
11 U.S.C. 1322(b)(8)……………………………………………………       9, 11
11 U.S.C. 1325……………………………………………………….      9, 10, 21
11 U.S.C. 1329(a)…………………………………………………...        11

New York Uniform Commercial Code 9-615……………………………..       8, 12
New York Uniform Commercial Code 9-102(42)…………………………..       19

United States Supreme Court Cases

Boston Chamber v City of Boston, 217 U.S. 189……………………………..       17
Butner v United States, 440 U.S. 48………………………………………….      18
Contributors to Penn Hosp. v Philadelphia, 245 U.S. 20………………………       18
Dewsnup v Timm, 502 U.S. 410……………………………………………….      15
El Paso v Simmons, 279 U.S. 491…………………………………………….      19
FCC v Nextwave Personal Comm. Inc., 537 U.S. 293………………………..       7
First Lutheran Church v Los Angeles County, 482 U.S. 304………………….      17
Goldberg v Kelly, 397 U.S. 254……………………………………………….      18
Johnson v Home State Bank, 501 U.S. 78……………………………………       7
Long Island Water Supply Co. v Brooklyn, 166 U.S. 685…………………….      19
Louisville Joint Stock Land Bank v Radford, 295 U.S. 555…………………       16
Lynch v U.S., 292 U.S. 571……………………………………………………      17, 19
Ruckelshaus v Monsanto Co., 467 U.S. 986……………………………………      16, 18
Sinking Fund Cases, 99 U.S. 700……………………………………………       16
Travelers Casualty & Surety Co. v Pacific Gas & Electric Co., 549 U.S. ____       7, 13
U.S. v Security Industrial Bank, 459 U.S. 70………………………………...       16, 20

Federal Court of Appeals Cases

In re: Adkins, 425 F.3d 296 (6th Cir. 2005)…………………………………       10
Fleck v KDI Sylvan Pools, Inc., 981 F.2d 107 (3rd Cir. 1992)…………………       10
In re: Johnson, 708 F.2d 865 (2nd Cir. 1983)…………………………………..       14
In re: Kerwin, 996 F.2d 552 (2nd Cir. 1993)……………………………………       15
In re: Manville Forest Products Corp., 209 F.3d 125 (2nd Cir. 2000)…………..       7, 8

## JURISDICTIONAL STATEMENT,
## STANDARD OF REVIEW AND
## CORPORATE DISCLOSURE

This case is an appeal from the final order of Bankruptcy Judge Cecelia G. Morris, denying FMCC's objection to the debtor's plan.

Pursuant to 28 U.S.C. §1334(a), the United States Bankruptcy Court has original and exclusive jurisdiction of all cases under Title 11, United States Code. The Bankruptcy Court had jurisdiction over this matter as a core proceeding under 28 U.S.C. §157(b((2)(B) and (L). Pursuant to 28 U.S.C. §158(a), the United States District Court has jurisdiction vested in it to hear appeals from the United States Bankruptcy Court.

## STANDARD OF REVIEW

Standard of Review – Issues at law in bankruptcy appeals are to be reviewed *de novo.* [See: In re: Furio, 77 F.3d 622, 624 (2nd Cir. 1996)]

## CORPORATE DISCLOSURE

American Honda Finance Corporation is a wholly owned subsidiary of Honda North America, Inc. which is a privately held corporation.

Bank of America, N.A., is a publicly held corporation.

BMW Financial Services N.A., LLC is a privately owned corporation.

Manufacturers and Traders Trust Company is a publicly held corporation.

Nissan Motor Acceptance Corporation is a wholly owned subsidiary of Nissan North America, N.A., which is a privately held corporation.

Sovereign Bank is a publicly held corporation.

The New York State Credit Union League, Inc. is a non-profit corporation consisting of 380 Credit Unions operating in New York State.

## ARGUMENT

**THE VIEWS ON THE EXTREME ENDS OF THE ISSUE PRESENT
UNNECESSARY INTERPRETATIVE DIFFICULTIES AND
UNWARRANTED RESULTS**

## POINT I

**ORIENTATION – THE NATURE AND EXISTENCE OF
A DEFICIENCY CLAIM**

The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). As recently noted by the Supreme Court in Travelers Casualty & Surety Co. v Pacific Gas & Electric Co., 549 U.S. \_\_\_\_\_ (2007) (slip opinion at page 5), state law largely determines what is a "claim" in bankruptcy ("…when the Bankruptcy Code uses the word 'claim'…it is usually referring to a right to payment recognized under state law.")

In In re: Manville Forest Products Corp., 209 F.3d 125, 128 (2000), the Second Circuit Court of Appeals reiterated that by defining the term claim so broadly, Congress intended that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." (quoting H.R.Rep. No. 95-595, 95th Cong., 2nd Sess. 309 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6266)

Labels are irrelevant. Regardless of the label used to characterize an obligation, if the debtor is answerable in law or equity for any form of obligation, that obligation is considered a "claim" under the Bankruptcy Code. [See: FCC v Nextwave Personal Comm. Inc., 537 U.S. 293, 302 (2003); Johnson v Home State Bank, 501 U.S. 78, 83 (1991)]

All parties and the Lower Court agree that as a fundamental principle a debtor is answerable for a deficiency balance arising after sale of collateral. It is important that the debtor's obligation to

pay a deficiency balance exists independently of the parties' contract as a matter of law under New

York Uniform Commercial Code Section 9-615:

> **§9-615. Application of Proceeds of Disposition; Liability for Deficiency and Right to Surplus.**
> (d)  Surplus or deficiency if obligation is secured.  If the security interest under which a disposition is made secures payment or performance of an obligation, after making the payments and applications required by subsection (a) and permitted by subsection (c):
>> (2) the obligor is liable for any deficiency.  (Emphasis Supplied)

Thus, even without any express contractual provisions authorizing a deficiency, a 910

creditor is entitled to a "claim" for the potential unsecured deficiency, albeit contingent, unmatured

and unliquidated.  (See: FCC v Nextwave, *supra* at 293, noting that legal and regulatory obligations

fall within the definition of a bankruptcy claim)

The fact that a deficiency claim is contingent and unmatured (unliquidated) at the time of

the bankruptcy filing certainly does not remove it from the scope of the definition of a bankruptcy

claim.  When a contract is signed pre-petition wherein it is agreed in advance that an enforceable

obligation will exist in the event of a certain future occurrence, that prospective obligation will be

considered a "claim" for bankruptcy purposes.  [See: In re: Manville Forest Products Corp., 209

F.3d 125, 129 (2nd Cir. 2000)]  Indeed, the Court in In re: Manville (*supra* at 129) held: A "claim

may exist even where…the parties lack complete knowledge about the scope of its potential

liability."

## POINT II

### THE "SURRENDER AND PAY ALL" VIEW

All parties and the Lower Court agree that at the beginning of the Chapter 13 case a 910 creditor is entitled to an allowed secured claim.  Bankruptcy Code Section 502(b) states that an allowed claim is deemed allowed "…as of the date of the filing of the petition…"  This timing provision is important because it confirms that allowance of the claim is not impacted by post-petition actions of the debtor, such as surrender.  A post-petition surrender, by itself, cannot prevent claim-allowance because the claim is already deemed allowed by the time the surrender occurs.  Surrender only impacts the secured claim by reducing the amount of the claim by the sale proceeds [pursuant to Code Section 1322(b)(8)]

Once the secured claim is allowed (fixed in status as of the petition date), it only can be altered by operation of a specific Bankruptcy Code section.  If the claim is not altered or disallowed, it must be provided for and paid in full in order for the debtor to be discharged from that claim under 11 U.S.C. 1328.

Here arises the key question for the debtor – what section of the Bankruptcy Code can be used to alter or reclassify a previously allowed secured claim?

There is only one section of bankruptcy law which is designed to determine claim status: that is 11 U.S.C. 506.

There is no question that if the debtor were able to invoke Section 506, a 910 creditor's previously allowed secured claim could be modified.

However, there is no question that under the hanging paragraph of 11 U.S.C. 1325 Section 506 cannot be used to modify a 910 creditor's secured claim.

The case of <u>In re: Adkins</u>, 425 F.3d 296, 305 (6th Cir. 2005) provides a very close analogy. In <u>Adkins</u> a debtor surrendered a vehicle post-confirmation and then sought to use Code Section 506 to reclassify the creditor's previously allowed secured claim. The Court rejected the debtor's argument noting that the debtor could not invoke Section 506 post-confirmation and without Section 506 there is no legal basis to reclassify or modify a previously allowed secured claim. In the present case, just as in <u>Adkins</u>, the debtor cannot use Section 506 to attack the allowed secured claim. The only difference between <u>Adkins</u> and the present case is the reason why 506 cannot be applied – in <u>Adkins</u> the bar was due to plan confirmation; here the bar is the hanging paragraph. The legal principle is constant. Without Section 506 there is no authority to reclassify an allowed claim.

Furthermore and without Section 506, the Doctrine of Judicial Estoppel prevents reclassification of an allowed secured claim. Judicial Estoppel precludes a party from gaining an advantage by taking one position, and then after his interests have changed, seeking a second advantage by taking an incompatible position. [See: <u>Fleck v KDI Sylvan Pools Inc.</u>, 981 F.2d 107, 121 (3rd Cir. 1992)] Under the plain language of Section 1325(a)(5)(C), surrender may only be used relative to an "allowed secured claim". By electing to surrender, the debtor necessarily acknowledges that the 910 creditor holds an allowed secured claim. Under the Doctrine of Judicial Estoppel, the debtor cannot recognize that the 910 creditor holds an allowed secured claim in order to invoke the surrender option and then, after receiving the benefit of that option, argue the exact opposite position.

Absent Section 506, there is simply no authority which would enable the debtor to alter, reclassify or expunge the previously allowed 910 creditor's allowed secured claim. Because Code Section 502 places the burden on the debtor to affirmatively challenge a claim, the lack of statutory

authority for such a challenge is fatal.  The claim status (allowed secured claim) remains preserved

by the hanging paragraph and must be paid (less the actual sale proceeds which may be applied to

lower the claim through Code Section 1322(b)(8) pre-confirmation or through Code Section

1329(a) post-confirmation).

## POINT III

### THE "SURRENDER AND PAY NOTHING" VIEW

This view is well articulated in the order on appeal.  The debtor and the Lower Court agree that Code Section 506 does not apply to a 910 creditor and posit that without Section 506 a 910 creditor cannot have an unsecured claim allowed.  One immediately evident problem with this view is that it overlooks the fact that claim allowance is governed by Code Section 502, not Section 506, and that the definition of a "claim" under Code Section 101(5) is broad enough to include a contingent and unmatured unsecured deficiency claim.  The unsecured claim component of a 910 creditor's claim ceases to be contingent and matures once the sale of the vehicle occurs.

Additionally, the debtor and the Lower Court assert that once a vehicle is surrendered and sold all of the creditor's claim rights cease to exist because there is a "legal fiction" that the vehicle is worth the full amount of the debt owed to the creditor, and thus, it would be illogical for a creditor to have any type of claim after the vehicle is surrendered.  The central problem with this "fiction" is that it ignores the real state of law -- that a contingent, unmatured right to a deficiency claim can exist both by contract and by operation of law (UCC 9-615).

Surrender does not eliminate all claims but is one of the contingencies (another being sale and credit of proceeds) that leads to the maturity of the unsecured deficiency claim which is an integral part of the secured transaction.

In reviewing the cases from around the Country which support the "surrender and pay nothing" view it appears that much of the interpretive difficulty stems from the plastic, adaptive nature of contingent and unmatured claims themselves.  The analysis seems to have gone off track.  There is no need to resort to "legal fiction" to solve the surrender/claim question if the focus is kept

on the reality that pre-petition contingent, unmatured deficiency claims can and often do, mature post-petition in conjunction with surrender of collateral.

Moreover, the resort to "legal fiction" seems to arise from the premise that state law has no bearing on what constitutes a "claim" under Code Section 101(5).  The premise is highly questionable considering the Supreme Court's recent pronouncement that state law is not only important, it is usually determinative as to what constitutes a bankruptcy claim.  [See: Travelers Casualty & Surety Co. of America v Pacific Gas & Electric Co., 549 U.S. __ (2007)]

## POINT IV

## THE "MIDDLE GROUND" VIEW

### A.  Allowance of a Claim for a Deficiency

Under the express language of 11 U.S.C. 502(b)(1), a claim cannot as a matter of law be disallowed

because it is contingent or unmatured.  Thus, unless there is a specific defense to the underlying

contract, a claim filed by a 910 creditor under 11 U.S.C. 501 for a contingent, unmatured,

unliquidated unsecured deficiency balance must be allowed.

### B.  Filing a Claim for a Deficiency under Section 501

In In re: Johnson, 708 F.2d 865, 868 (2nd Cir. 1983), the Second Circuit indicated that when

an amendment to bankruptcy law is newly enacted it may be permissible to take a more "flexible"

approach to issues until judicial guidance is provided through case law.

In the case at Bar, FMCC filed a proof of claim pursuant to 11 U.S.C. 501 specifically

indicating that it was filing a "910 claim".  After the vehicle was sold and a deficiency was

established FMCC attempted to clarify its claim by filing an amendment to its initial claim asserting

the unsecured deficiency.

It would have been more informative if FMCC had filed its initial proof asserting both a

secured claim and a contingent and unmatured claim for the prospective deficiency.  Presumably,

this was not done because under years of pre-BAPCPA practice it was not deemed necessary to

expressly delineate the existence of the contingent and unmatured claim for a deficiency – the claim

was considered inherent.

It would be consistent with a "flexible" approach to the new changes in the law to consider

FMCC's initial proof of claim which clearly asserted 910 claim status to embody all of the 910

creditors' rights including the contingent, unmatured right to a deficiency which was later clarified

once the contingency occurred.  With judicial sanction, it could certainly be expected in future cases that a 910 creditor would have to specifically delineate all aspects of its claim.

## C.  Pre-Amendment Practice Supports This Result

In <u>Dewsnup v Timm</u>, 502 U.S. 410, 419 (1992), the Supreme Court noted that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate'", and thus, there must be either unambiguous language used in the statute or an indication in the legislative history that a new enactment was designed to alter well-settled bankruptcy principles.

The parties and the Lower Court acknowledge that prior to the October 17, 2005 amendments, it was universally understood that surrender did not extinguish a creditor's right to assert an unsecured claim for a deficiency which matured post-petition.  [See: <u>In re: Kerwin</u>, 996 F.2d 552, 577 (2nd Cir. 1993)]

There is no indication that by enacting the hanging paragraph in Section 1325 that Congress intended to disrupt the well-balanced and accepted practice of recognizing an unsecured claim for a deficiency balance when it matures post-petition.

# POINT V

## THE FIFTH AMENDMENT STRONGLY MILITATES AGAINST THE "SURRENDER AND PAY NOTHING" VIEW

### A.  The Fifth Amendment Applies in Bankruptcy Cases

The Fifth Amendment of the Constitution provides that "[n]o person shall…be deprived of…property, without due process of law", "nor shall private property be taken for public use, without just compensation."

The U.S. Supreme Court has made it clear that the Fifth Amendment imposes definite Constitutional limitations on takings of property under bankruptcy law.

In Louisville Joint Stock Land Bank v Radford, 295 U.S. 555, 602 (1935) the Court held:

> "the bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment."

In U.S. v Security Industrial Bank, 459 U.S. 70, 76 (1982), the Court could not have been more clear:

> The Bankruptcy Power is subject to the Fifth Amendment's prohibition against taking private property without compensation.

As used in the Fifth Amendment, the term "property" has been broadly defined to include any right or interest which may be the subject of ownership under applicable state law, including intangible rights and contract rights.  [See:  Ruckelshaus v Monsanto Co., 467 U.S. 986, 1003 (1984); Sinking Fund Cases, 99 U.S. 700, 738, Strong, J. dissenting – "What is Property?...It is, in reference to its subject, whatever a person can possess…The subject may be corporeal or incorporeal.  A right in action is as completely property as is title to land…The right of a promisee to demand payment when the note falls due is a right of property…"]

16

**B.  The Real Issue is Compensation**

It is critical to recall that the Fifth Amendment does not limit government interference with property rights *per se*, but rather requires "just compensation" where an otherwise proper interference affects a taking. (See: First Lutheran Church v Los Angeles County, 482 U.S. 304, 315) "Taking" means any material lessening of a right or interest.  (See: Lynch v U.S., 292 U.S. 571, 580)

What constitutes "just compensation" is not defined but it is well settled that the test is what the owner has lost, not what the taker has gained.  [See: Boston Chamber v City of Boston, 217 U.S. 189, 195 (1910)]

Chapter 13 bankruptcy has the intended effect of taking away a creditor's right to sue to collect an unpaid debt.  This is a "taking" as it certainly is a material lessening of a right.  However, this taking does not typically violate the Fifth Amendment because there is compensation provided in the form of the right to allowance of a claim under 11 U.S.C. 502 for a portion of the distribution to be made by the Estate.  This compensation may be considered "just" because all the creditors are afforded the same right – they are treated the same.

The question then becomes one of just compensation.  If the 910 creditor receives "just compensation" for its loss of the right to collect the deficiency, then the Fifth Amendment does not impede use of the "surrender and pay nothing" view.

Consideration of what generally happens to creditor claims in Chapter 13 helps bring the constitutional law dilemma issue into focus.

Suppose there are two different creditors: a credit card company and a 910 vehicle creditor. The credit card company has a contract with the debtor which gives the company an *in personum* remedy against the debtor – the right to sue to collect the debt.  The 910 car creditor holds a broader

contract which allows both *in personum* and *in rem* rights. The *in personum* remedy is the right to sue to collect the unpaid debt, including any deficiency. The *in rem* rights include, but are not limited to, recovery of the vehicle.

In a Chapter 13 case, the credit card company loses the right to sue the debtor to collect its debt, but in exchange is allowed a claim which gives the creditor a portion of the Estate's distribution to creditors. (11 U.S.C. 502). In the same case, the 910 creditor takes back its collateral, disposes of the vehicle and establishes a deficiency debt. As with the credit card company, the 910 creditor loses its right to sue the debtor to collect the debt. Fair enough, but there is no compensation being offered to the 910 creditor. Moreover, such disparate treatment is not "just".

**C. Error in the Lower Court's Analysis**

The Lower Court held that the Fifth Amendment does not apply to the "surrender and pay nothing" view for two reasons: first, the Court held that a deficiency claim is a mere contract right; and second, that contract rights are not considered to be property. The Lower Court erred on both ends of its analysis.

The right to pursue a deficiency is not a mere contract right. It is more than that. Property rights are determined by state law. (See: Butner v United States, 440 U.S. 48, 57) Under New York law, the right to a deficiency arises not merely by contract but also by Common Law as codified in UCC 9-615. The right to a deficiency has elements of both a contract right and a statutory right. Interests that are granted or defined by statutory terms are property. [See: Goldberg v Kelly, 397 U.S. 254 (1970)] Even if the right to a deficiency were a mere contract right, the United States Supreme Court has on many occasions expressly held that contract rights are property subject to the Fifth Amendment. (See: Ruckelshaus v Monsanto Co., 467 U.S. 986, 1003 (1984); Contributors to

Penn Hosp. v Philadelphia, 245 U.S. 20 (1917); El Paso v Simmons, 379 U.S. 491, 533-534 (1965),

Black, J. dissenting; Long Island Water Supply Co. v Brooklyn; 166 U.S. 685, 690 – "A contract is

property, and like any other property, may be taken…subject to rule of just compensation…"]

In Lynch v U.S., 292 U.S. 571, 579, the Supreme Court could not have been more clear in

holding that contract rights are protected by the Fifth Amendment:

> Valid contracts are property…rights…arising out of a contract…are protected by the
> Fifth Amendment.

Moreover, New York State law recognizes that a creditor's right to recover a deficiency debt

which arises upon disposition of recovered collateral is a property right.

Under New York law this right is defined as a "general intangible", a "thing [chose] in

action" and a "payment intangible".  (See: UCC 9-102(42) confirming that general intangibles,

payment intangibles and causes in action are considered to be personal property)

The Lower Court cites no appellate level holding to support its conclusion that contracts are

not property.  The Lower Court misinterprets a phrase from U.S. v Security Industrial Bank (supra)

where the Court observed that in personum and in rem rights "may" be "different in legal

contemplation".  Through this phrase the Supreme Court did not hold that contracts are not property

but rather rejected the erroneous argument that in bankruptcy there is no difference between the

rights of secured and unsecured creditors.

The Supreme Court's use of the word "may" is important.  Property rights are, in the main,

defined by state law and state law varies.  New York law does classify a cause of action (action for

deficiency) as personal property.  [UCC 9-102(42)]  Legal differences between various types of

personal property rights do exist.  For instance, the measure for compensation upon taking may

differ as illustrated by this case – when corporeal rights to a vehicle are taken, the creditor is

compensated by payment of the fair market value of the vehicle; when the incorporeal right to a

deficiency is taken, the creditor is compensated by receiving its equal percentage distribution from the Bankruptcy Estate.  The legal contemplation of each right may be different, but the rights are no less property rights.  The law has long since moved beyond any supposition that only corporeal, in rem rights are considered property protected by the Fifth Amendment.

## D.  Conclusion

The Fifth Amendment requires that if a 910 creditor is denied its contractual property right to sue the debtor to collect the unpaid deficiency, the 910 creditor must receive the same compensation for loss of this right which is granted to all other creditors, namely the right to allowance of a claim (unsecured) for a portion of the Estate distribution.  Because the "surrender and pay nothing" view denies such compensation to the 910 creditor, the theory should be rejected as an unconstitutional violation of the Fifth Amendment.

The well settled rule that statutes must be interpreted in a manner which avoids constitutional doubt underscores this conclusion.  (See: U.S. v Security Industrial Bank, 459 U.S. 70, 82)

## <u>CONCLUSION</u>

**THE COURT SHOULD AVOID THE POLAR EXTREMES
PRESENTED BY THE "SURRENDER AND PAY NOTHING"
AND THE "SURRENDER AND PAY ALL" VIEWS
IN FAVOR OF THE "MIDDLE GROUND" VIEW**

Such a determination in justified by a plain, literal reading of Code Sections 502, 101(5) and

1325 in conjunction with constitutional law and the equitable principles of the Bankruptcy Code.

Dated:  Albany, New York
         April 27, 2007

                              **MILLER & MEOLA**
                              A Professional Corporation


                    By:     */a/ Richard J. Miller*
                            **Richard J. Miller #505561**
                            Attorney for *Amici Curiae*
                            14 Corporate Woods Boulevard
                            Albany, New York 12211
                            Phone: (518) 465-7591