s:\appeal\pinti.brief(910)

GENOVA & MALIN
Attorneys for Appellee
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
In Re:

              Bankruptcy Court
    BALDASSARRE PINTI,            Case No. 06-35230(CGM)
    aka BUDDY PINTI,             (Chapter 13)

           Debtor.
----------------------------------------------------x
FORD MOTOR CREDIT COMPANY,

            Appellant,          District Court
                            Civil Docket
    - against -                 Case No. 7:07-cv-02848(SCR)

BALDASSARRE PINTI
aka BUDDY PINTI,

           Appellee.
----------------------------------------------------x

## ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------------------------------

### BRIEF FOR DEBTOR-APPELLEE

----------------------------------------------------------------------------------------------------

                                 GENOVA & MALIN
                                 Attorneys for Debtors-Appellee

            By:     /s/ Andrea B. Malin
                      ANDREA B. MALIN, ESQ. (AM4424)
                      1136 Route 9
                      Wappingers Falls NY 12590
                      (845) 298-1600

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... i

TABLE OF STATUTES & RULES ....................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

JURISDICTION STATEMENT ............................................................. 1

ISSUE PRESENTED ............................................................................. 2

STANDARD OF REVIEW .................................................................... 2

STATEMENT OF THE CASE ............................................................ 2, 3, 4

STATEMENT OF FACTS .................................................................. 4, 5

SUMMARY ....................................................................................... 5, 6

ARGUMENT

POINT I:

THE BANKRUPTCY COURT DID NOT ERR IN ITS INTERPRETATION AND APPLICATION OF SECTIONS 1325(a)(5)© AND SECTION 506 OF THE UNITED STATES BANKRUPTCY CODE BY DENYING FORD'S OBJECTION TO CONFIRMATION AS IT DETERMINED THAT FORD WAS NOT ENTITLED TO FILE A CLAIM FOR A DEFICIENCY................................................. 6

POINT II

THE FINDING THAT FORD IS NOT ENTITLED TO A DEFICIENCY CLAIM WHEN A 910 VEHICLE IS SURRENDERED TO IT UNDER CHAPTER 13 OF THE CODE DOES NOT VIOLATE THE TAKINGS CLAUSE IN THE FIFTH AMENDMENT................................................. 18

CONCLUSION .................................................................................. 21, 22

# TABLE OF AUTHORITIES

In re Nichols, 440 F.3d 850 (6th Cir. 2005)............................................ 6, 8, 9, 15, 18, 19, 20

In re Osborn, 2007 WL 542435 (8th Cir. B.A.P. 2007)......................... 6, 8, 9, 10, 15

In re Nicely, 349 B.R. 600 (B.Ct.W.D.Missouri 2006) ........................ 6, 8, 9, 10, 15

In re Pool, 351 B.R. 747 (B.Ct.D.Or. 2006) ......................................... 6, 8, 9, 10, 15

In re Ezel, 338 B.R. 330 (B.Ct.E.D.Tenn. 2006) ................................. 6, 8, 9, 10, 15

In re Evans, 349 B.R. 498 (B.Ct.E.D. Michigan 2006) ........................ 6, 8, 9, 10, 12, 15

In re Osborn, 348 B.R. 500 (B.Ct.W.D.Mo. 2006) ............................. 6, 8, 9, 10, 15

In re Sparks, 346 B.R. 767 (B.Ct.S.D.Ohio 2006) ............................... 6, 8, 10, 15

In re Press, 2006 WL 2734335 (B.Ct.S.D.Fla. 2006) ......................... 6, 8, 10, 15

In re Brown, 346 B.R. 868 (B.Ct.N.D.Fla. 2006) ................................ 7, 8, 10, 15

In re Payne, 347 B.R. 278 (B.Ct.S.D.Ohio 2006) ................................ 7, 8, 10, 15

In re Lowder, 2006 WL 1794737 (B.Ct.D.Kan 2006) ......................... 7, 8, 10, 15

In re Vega, 344 B.R. 616 (B.Ct.D.Kan 2006) ...................................... 7, 8, 10, 15

In re Quick, 2007 W.L. 269808 (B.Ct. N.D. Okla. 2007) .................... 7, 8, 10, 15

In re Moon, 359 B.R. 329 (B.Ct.N.D.Ala. 2007) ................................. 7, 8, 10, 15

In re Durham, 2006 WL 4058354 (B.Ct.D.Utah 2006) ........................ 7, 8, 10, 15

In re Gentry, 2006 WL 3392947 (B.Ct.E.D.Tenn. 2006) .................... 7, 8, 10, 15

In re Turkowitch, 355 B.R. 120 (B.Ct.W.D.Wisc. 2006) .................... 7, 8, 10, 15

In re Fedderson, 355 B.R. 738 (B.Ct.S.D.Ill 2006) ............................. 7, 8, 10, 15

In re Maggett, 2006 WL 3478991(B.Ct.Nebraska 2006) ..................... 7, 8, 10, 15

In re Kerwin, 996 F.2d 552 (2d Cir. 1993) ........................................... 14, 15, 17

In re Pinti, 2007 W.L. 744031 (B.Ct.S.D.N.Y. 2007) ......................... 14, 16

In re Pond, 252 F.3d 122 (2nd Cir. 2001) .............................................. 16

In re Particka, 355 B.R. 616 (B.Ct.E.D.Michigan 2006) ..................... 8, 10, 11, 12, 17

In re Zehrung, 351 B.R. 675 (B.Ct. W.D.Wisconsin 2006) ................. 8, 10, 12, 17

Commercial Corp. v. Rash, 520 U.S. 953, 117 S.Ct. 1879 (1997 ) ...... 14

In re Duke, 354 B.R. 806 (B.Ct.Kentucky 2006) ................................ 10

Nobleman v. American Sav., 508 U.S. 324, 113 S.Ct. 2106,
124 L.Ed.2d 288 (1993) ....................................................................... 15, 17, 18

Brutner v. United States, 440 U.S. 48, 99 S.Ct, 914,
59 L.Ed.2d 136 (1979) ......................................................................... 17

Penn Central Transportation Co. v. New York City, 438 U.S. 104,
98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) .................................................. 18, 19, 20

Prune Yard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035,

64 L.Ed.2d 741 (1980) ............................................................. 18, 19, 20

United States v. Security Industrial Bank, 459 U.S. 70,

103 S.Ct. 407 (1982) ............................................................. 18, 19, 20

Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857,

46 L.Ed. 113 (1902) ............................................................. 18

Armstrong v. United States, 364 U.S. 40, 80 S.Ct, 1563,

4   L.Ed.2d 1554 (1960)......................................................... 19

## TABLE OF STATUTES

28 U.S.C. §§158(a) and 157 ....................................................... 1

11 U.S.C. §501 ....................................................... 13,14

11 U.S.C. §502 ....................................................... 10, 12, 13, 17

11 U.S.C. §506 ....................................................... 1, 5, 6, 10, 13, 14, 15, 16, 17, 18, 20

11 U.S.C. §522(f) ....................................................... 21

11 U.S.C. §524 ....................................................... 21

11 U.S.C. § 1126 ....................................................... 21

11 U.S.C. §1322 ....................................................... 15

11 U.S.C. §1325(a)(5)© ....................................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 20

## TABLE OF RULES

Federal Rule of Bankruptcy Procedure 3002 ....................................... 13

Federal Rule of Bankruptcy Procedure 3004 ....................................... 14

Federal Rule of Bankruptcy Procedure 3012 ....................................... 10

GENOVA & MALIN
Attorneys for Appellee
Hampton Business Center
1136 Route 9
Wappingers Falls NY 12590
(845) 298-1600
Thomas Genova (TG4706)
Andrea B. Malin (AM4424)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
In Re:
                                      Bankruptcy Court
        BALDASSARRE PINTI,           Case No. 06-35230(CGM)
        aka BUDDY PINTI,             (Chapter 13)

                   Debtor.
----------------------------------------------------x
FORD MOTOR CREDIT COMPANY,

                   Appellant,            District Court
                                     Civil Docket
    - against -                           Case No. 7:07-cv-02848(SCR)

BALDASSARRE PINTI
aka BUDDY PINTI,

                   Appellee.
----------------------------------------------------x

## APPELLEE'S BRIEF

## PRELIMINARY STATEMENT

        This brief is submitted on behalf of the Debtor-Appellee, BALDASSARRE PINTI,  in

opposition to the Appellant's, FORD MOTOR COMPANY ("FORD"), appeal from the holding of the

United States Bankruptcy Court, Southern District of New York, Poughkeepsie, New York, entered on

March 13, 2007, permitting the debtor to surrender a vehicle which was purchased within 910 days of the

filing of the debtor's petition in full satisfaction of the pre-petition debt and disallowing FORD a claim

against the debtor for a deficiency, pursuant to 11 U.S.C. §§506 and 1325(a)(5)©).

## JURISDICTION STATEMENT

        This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(a) and 157.

### ISSUE PRESENTED

Did the United States Bankruptcy Court err in its holding that Section 1325(a)(5)(©) of the United States Bankruptcy Code, as amended, permits a Chapter 13 debtor to surrender a vehicle purchased within 910 days (a "910 Vehicle") of the filing of the debtor's petition in bankruptcy in full satisfaction of the purchase money secured creditor's claim?

### STANDARD OF REVIEW

In reviewing ruling of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division's ruling the standard for this Court is <u>de</u> <u>novo</u> review.

### STATEMENT OF THE CASE

The Appellant, FORD MOTOR COMPANY ("FORD"), is appealing from the Decision and Order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), rendered by the United States Bankruptcy Court on March 13, 2007 and March 15, 2007, respectfully, denying FORD'S Objection to the Confirmation of the Debtor's Chapter 13 Plan holding that a Chapter 13 debtor may surrender a vehicle purchased with 910 days prior to the filing of the debtor's petition in full satisfaction of the debt owed to the purchase money secured creditor pursuant to 11 U.S.C. §1325(a)(5)(©).

On or about July 26, 2004, the debtor purchased a 2004 Ford F250 Pick up Truck (the "Vehicle"). Upon delivery of the Vehicle, the debtor executed a Retail Installment Contract and granted to FORD a purchase money security interest in the Vehicle.

On March 24, 2006, an Order for Relief under Chapter 13 of the United States Bankruptcy Code (the "Code") was entered upon a Petition filed by the debtor. Shortly thereafter, the debtor voluntarily surrendered to FORD the debtor's 2004 Ford F250 upon which FORD held a properly perfected purchase money security interest.

On July 25, 2006, to permit FORD to sell the Vehicle, FORD filed a Motion Requesting Relief from the Automatic Stay provided under 11 U.S.C. §362. Same was granted by the United States Bankruptcy Court, as FORD was already in possession of the Vehicle.

On or about April 6, 2006, FORD filed a Proof of Claim in the debtor's case seeking to be paid in full under the debtor's Chapter 13 Plan as a secured creditor.

On September 27, 2006, the debtor filed a Motion Objecting to FORD'S Proof of Claim. The debtor argued that FORD was not entitled to payment under the debtor's Chapter 13 Plan as the debtor had surrendered to FORD the Vehicle in full satisfaction of the debt due thereon pursuant to 11 U.S.C. §1325(a)(5)©).   On November 2, 2006, FORD filed Opposition to the debtor's Motion Objecting to FORD'S Claim alleging that the debtor could not object to the claim upon the basis that the Chapter 13 plan did not state the type of treatment that FORD'S claim would receive.

On December 15, 2006, the debtor filed an Amended Chapter 13 Plan setting forth the treatment intended for FORD'S claim, to wit: that said claim had been satisfied in full upon the surrender of the Vehicle and thus would receive no payment  through the debtor's Amended Chapter 13 Plan.   On December 29, 2006, FORD filed an Objection to the Confirmation of the Debtor's Plan arguing that the debtor was not permitted to surrender the Vehicle in full satisfaction, but instead, the debtor was liable to FORD for a deficiency amount resulting from the sale of the vehicle and that FORD was thus entitled to file a general unsecured claim in the debtor's Chapter 13 Plan.   On January 22, 2007, the debtor filed Opposition to FORD'S Objection to Confirmation of the Amended Plan.

Thereafter, the United States Bankruptcy Court provided to each of the parties a full and fair opportunity to submit memorandum and supplemental memorandum in favor of their legal positions. After careful and lengthy consideration of the issue by the Bankruptcy Judge Cecelia G. Morris, as is evident by the well reasoned Decision on the issue, the Court ruled in favor of the debtor.  The Bankruptcy Court's decision was entered on March 13, 2007 and the Order Denying FORD'S Objection to Confirmation was entered on March 15, 2007.

On March 23, 2007, FORD filed its Notice of Appeal.   On March 29, 2007, The Designation of Content and Issues on Appeal was filed.   On April 30, 2007, FORD filed its Appeal Brief and, pursuant to the Affidavit of Service filed with the Court by FORD, same was served.

## STATEMENT OF FACTS

On or about July 26, 2004, the debtor purchased a 2004 Ford F250 Pick up Truck (the "Vehicle").   Upon delivery of the Vehicle, the debtor executed aq Retail Installment Contract and granted to FORD a purchase money security interest in the Vehicle.

On March 24, 2006, an Order for Relief under Chapter 13 of the United States Bankruptcy Code (the "Code") was entered upon a Petition filed by the debtor.  Shortly thereafter, the debtor voluntarily surrender to FORD the debtor's 2004 Ford F250 upon which FORD held a  properly perfected purchase money security interest.

On July 25, 2006, to permit FORD to sell the Vehicle, FORD filed a Motion Requesting Relief from the Automatic Stay provided under 11 U.S.C. §362.  Same was granted by the United States Bankruptcy Court, as FORD was already in possession of same.

At the time of the filing of the debtor's petition, FORD had a properly perfected purchase money lien on the debtor's Vehicle which had an outstanding balance of $26,763.85.         O n  o r about April 6, 2006, FORD filed a Proof of Claim in the debtor's case seeking to be paid in full under the debtor's Chapter 13 Plan as a secured creditor.

On September 27, 2006, the debtor filed a Motion Objecting to FORD'S Proof of Claim, as the debtor argued that FORD was not entitled to payment under the debtor's Chapter 13 Plan,  as the debtor had surrendered to FORD the Vehicle in full satisfaction of the debt due thereon pursuant to 11 U.S.C. §1325(a)(5)©.   On November 2, 2006, FORD filed Opposition to the debtor's Motion Objecting to FORD'S Claim alleging that the debtor could not object to the claim upon the basis that the Chapter 13 plan did not state the type of treatment that FORD'S claim would receive.

On December 15, 2006, the debtor filed an Amended Chapter 13 Plan setting forth the treatment intended for FORD'S claim, to wit: that said claim had been satisfied in full upon the surrender of the Vehicle.  On December 29, 2006, FORD filed an Objection to the Confirmation of the Debtor's Plan arguing that the debtor was not permitted to surrender the Vehicle in full satisfaction, but instead, the debtor was liable to FORD for a deficiency amount resulting from the sale of the vehicle and that FORD

4

was thus entitled to file a general unsecured claim in the debtor's Chapter 13 Plan. On January 22, 2007, the debtor filed Opposition to FORD'S Objection to Confirmation of the Amended Plan.

Thereafter, the United States Bankruptcy Court provided to each of the parties a full and fair opportunity to submit memorandum and supplemental memorandum in favor of their legal positions. After careful and lengthy consideration of the issue by the Learned Bankruptcy Judge Cecelia G. Morris, as is evident by the Decision on the issue, the Court ruled in favor of the debtor. The Bankruptcy Court's decision was entered on March 13, 2007 and the Order Denying FORD'S Objection to Confirmation was entered on March 15, 2007.

On March 23, 2007, FORD filed its Notice of Appeal. On March 29, 2007, The Designation of Content and Issues on Appeal was filed. On April 30, 2007, FORD filed its Appeal Brief and same was served.

## SUMMARY

The Appellant, FORD MOTOR COMPANY (the "FORD"), is appealing from the Order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), entered after a decision on said Motion was rendered by the United States Bankruptcy Court on March 13, 2007, dismissing FORD'S Objection to the Confirmation of the Debtor's Chapter 13 Plan holding that a Chapter 13 debtor may surrender a vehicle purchased with 910 days prior to the filing of the debtor's petition in full satisfaction of the debt owed to the purchase money secured creditor pursuant to 11 U.S.C. §1325(a)(5)© in favor of the Appellee. The crux of the FORD'S argument is that the Bankruptcy Court by misapplying Section 1325 and Section 506 of the United States Bankruptcy Code (the "Code") in denying FORD'S Objection to the Debtor's Confirmation and thus not permitting FORD to file an Amended Proof of Claim to obtain payment through the debtor's Amended Chapter 13 Plan as a general unsecured claim for a deficiency the United States Bankruptcy Court this ruling violated the Taking Clause of the Fifth Amendment.

The debtor will address each of the Appellant's arguments for reversal of the decision of the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division, as set forth

the following order as set forth herein under Point I and Point II of the debtor/Appellee's Brief:

       1.   **Neither section 11 U.S.C. §506 nor the application of the hanging paragraph in 11 U.S.C. §1325 of the Code may alter Ford's right to a deficiency claim in a bankruptcy case as Ford's right to said claim arises under State Law and not Federal Law and nothing in the Federal Law can change this right;**

       **2.   Not allowing Ford to file a deficiency claim in regard to a 910 vehicle violates the  Taking Clause of the Fifth Amendment.**

## ARGUMENT

### POINT I

**THE BANKRUPTCY COURT DID NOT ERR IN ITS INTERPRETATION AND APPLICATION OF SECTIONS 1325(a)(5)© AND SECTION 506 OF THE UNITED STATES BANKRUPTCY CODE BY DENYING FORD'S OBJECTION TO CONFIRMATION AS IT DETERMINED THAT FORD WAS NOT ENTITLED TO FILE A CLAIM FOR A DEFICIENCY**

       The United States Bankruptcy Court properly interpreted and applied the law in this matter by the entry of an Order Denying FORD'S Objection to the Confirmation of the Debtor's Amended Plan by ruling that a debtor may surrender a Vehicle purchased with in 910 days of the filing of a petition in bankruptcy in full satisfaction of the debt owed to the purchase money secured creditor.  11 U.S.C. §1325(a)(5)©; In re Nichols, 440 F.3d 850 (6th Cir. 2005); In re Osborn, 2007 WL 542435 (8th Cir. B.A.P. 2007); In re Nicely, 349 B.R. 600 (B.Ct.W.D.Missouri 2006); In re Pool, 351 B.R. 747 (B.Ct.D.Or. 2006); In re Ezel, 338 B.R. 330 (B.Ct.E.D.Tenn. 2006); In re Evans, 349 B.R. 498 (B.Ct.E.D. Michigan 2006); In re Osborn, 348 B.R. 500 (B.Ct.W.D.Mo. 2006); In re Sparks, 346 B.R. 767 (B.Ct.S.D.Ohio 2006); In re Press, 2006 WL 2734335 (B.Ct. S.D.Fla. 2006); In re Brown, 346 B.R. 868 (B.Ct.N.D.Fla. 2006); In re Payne, 347 B.R. 278 (B.Ct.S.D.Ohio 2006); In re Lowder, 2006 WL 1794737 (B.Ct.D.Kan 2006); In re Vega, 344 B.R. 616 (B.Ct.D.Kan 2006); In re Quick, 2007 W.L. 269808 (B.Ct. N.D. Okla. 2007); In re Moon, 359 B.R. 329 (B.Ct.N.D.Ala. 2007); In re Durham, 2006 WL 4058354 (B.Ct.D.Utah 2006);  In re Gentry, 2006 WL 3392947 (B.Ct.E.D.Tenn. 2006); In re

Turkowitch, 355 B.R. 120 (B.Ct.W.D.Wisc. 2006); In re Fedderson, 355 B.R. 738 (B.Ct.S.D.Ill 2006);

In re Maggett, 2006 WL 3478991 (B.Ct. D.Nebraska 2006).

   Section 1325 of the United States Bankruptcy Code, as amended, sets forth those

requirements which must be met in order for the Court to confirm a plan.  The required treatment of

allowed secured creditors in a debtor's plan is set forth in Section 1325(a)(5), which provides:

>   (a) Except as provided in subsection (b), the court shall confirm a plan if– ...
>
>     (5) With respect to each allowed secured claim provided for by the plan –
>
>     (A) The holder of such claim has accepted the plan;
>
>     (B)(I) The plan provides that –
>
>       (I) the holder of such claim retain the lien securing such claim until the earlier of –
>
>       (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>
>       (bb) discharge under section 1328; and
>
>       (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
>
>     (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
>     (iii) If –
>
>       (I) priority to be distributed pursuant to this subsection is in the form of periodic payment, such payments shall be in equal monthly amounts; and
>
>       (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
>       ©) the debtor surrenders the property securing such claim to such holder.

   Thereafter, after subparagraph (9) of §1325(a), the paragraph now known as the "hanging

paragraph," states:

> For the purpose of ***paragraph (5)[emphasis added],***
> Section 506 shall not apply to a claim described in that paragraph if the
> creditor has a purchase money security interest securing the debt that is
> the subject of the claim, the debt was incurred within the 910-day [sic]
> preceding the date of the filing of the petition, and the collateral for that
> debt consists of a motor vehicle ... acquired for the personal use of the
> debtor, or if collateral for that debt consists of any other thing of value, if
> the debtor was incurred during the 1-year period preceding the filing.

Several courts have considered the issue of whether a debtor may surrender a 910 vehicle in full satisfaction of the debt pursuant to 11 U.S.C. §1325(a)(5)©). Of these courts, the vast majority (including the only two Circuits that have addressed the issue) have concluded that a simple reading of the statute permits the debtor to surrender a 910 vehicle in complete satisfaction of the debt without regard for the actual value of the vehicle. Id.[1]

The majority of the courts have found that in considering the issue it is necessary to first consult the statute and if the statute is unambiguous:

> there is no need for the Court to inquire beyond the plain
> language of the statute. The plain meaning of legislation should be
> conclusive, except in the 'rare cases [in which] the literal application of a
> statute will produce a result demonstrably at odds with the intentions of the
> drafters.'

> The great majority of decisions on point have found that the
> language of the hanging paragraph is unambiguous.... Even if it were appropriate
> to resort to legislative history here, it would not help the creditor. In several cases,
> creditors have argued that 'given Congress' intent to enhance the rights of hanging
> paragraph creditors by preventing
> bifurcation when the debtor retains the collateral, Congress could not have
> intended to shortchange theses creditors when debtors surrender the
> collateral. However, the majority of courts have rejected this argument.

> In *Ezell,* the court throughly reviewed the legislative history on this
> issue and concluded that the 'statements of Congressional intent... basically mirror
> the statutory language.' *Ezell* at 338 B.R. at 341. Therefore, the *Ezell* court held,
> 'the court has no choice but to interpret the Hanging Paragraph as written, i.e., that
> it applies to both Revised §1325(a)(5)(B) and ©).

---

[1] Approximately four (4) courts have considered the issue and made a determination that the secured creditor maintains a right to a deficiency claim, the most notable: In re Particka, 355 B.R. 616 (B.Ct.E.D.Michigan 2006) and In re Zherung, 2006 WL 3059908 (B.Ct.W.D.Wis. 2006).

In re Evans, supra. at 500-501.

In *Osborn*, supra., the court stated:

> In addition, the literal application of the statutory language does not result in an absurd outcome. 'A result will only be deemed absurd if it is 'unthinkable, bizarre, or demonstrably at odds with the intentions of its drafters.' As discussed above, literal application is not demonstrably at odds with Congress' intent; and it is entirely logical that, if a creditor is to be deemed fully secured for one purpose, it should be fully secured for other purposes.

In re Osborn, supra. at 3.

The courts in Pool and Nicely explain it best in concluding that if a court is to literally interpret the statute it must do so with the recognition that the hanging paragraph applies to and changes not only the cram down and valuation of a secured claim if a debtor retains the vehicle, but it also modifies the result that occurs when a debtor surrenders a 910 vehicle under 11 U.S.C. §1325(a)(5)©). The majority finds that, as the law was prior to the modifications created by BAPCPA, Section 506 of the Code applies to surrender situations. Thus, the origin of deficiency arises not from the application of state law in the surrender scenario, but more properly the application of Section 506 of the Code which states that a creditor has the right to assert a deficiency as a general unsecured claim. The hanging paragraph of Section 1325 takes this application one step further as it simply values the secured claim of a 910 vehicle claimant at its full value in the bankruptcy case. 11 U.S.C. §1325(a)(5)©; In re Nichols, 440 F.3d 850 (6th Cir. 2005); In re Osborn, 2007 WL 542435 (8th Cir. B.A.P. 2007); In re Nicely, 349 B.R. 600 (B.Ct.W.D.Missouri 2006); In re Pool, 351 B.R. 747 (B.Ct.D.Or. 2006); In re Ezel, 338 B.R. 330 (B.Ct.E.D.Tenn. 2006); In re Evans, 349 B.R. 498 (B.Ct.E.D. Michigan 2006); In re Osborn, 348 B.R. 500 (B.Ct.W.D.Mo. 2006); In re Sparks, 346 B.R. 767 (B.Ct.S.D.Ohio 2006); In re Press, 2006 WL 2734335 (B.Ct. S.D.Fla. 2006); In re Brown, 346 B.R. 868 (B.Ct.N.D.Fla. 2006); In re Payne, 347 B.R. 278 (B.Ct.S.D.Ohio 2006); In re Lowder, 2006 WL 1794737 (B.Ct.D.Kan 2006); In re Vega, 344 B.R. 616 (B.Ct.D.Kan 2006); In re Quick, 2007 W.L. 269808 (B.Ct. N.D. Okla. 2007); In re Moon, 359 B.R. 329 (B.Ct.N.D.Ala. 2007); In re Durham, 2006 WL 4058354 (B.Ct.D.Utah 2006); In re Gentry, 2006 WL 3392947 (B.Ct.E.D.Tenn. 2006); In re Turkowitch, 355 B.R. 120 (B.Ct.W.D.Wisc. 2006);

<u>In re Fedderson</u>, 355 B.R. 738 (B.Ct.S.D.Ill 2006); <u>In re Maggett</u>, 2006 WL 3478991( B.Ct. D.Nebraska 2006).

    The minority view point may be briefly summarized by the determinations set forth by the Michigan Bankruptcy Court in <u>In re Particka</u>, 355 B.R. 616 (B.Ct.E.D.Michigan 2006) and by the Wisconsin Court in the case of <u>In re Zehrung</u>, 351 B.R. 675 (B.Ct.W.D.Wis. 2006).[2]  The reasoning arising from this line of decisions bases its opinion on a literal reading of 11 U.S.C. §§1325(a)(5)(B), 1325(a)(5)© and 1325(a)(9) ("the hanging paragraph") together with 11 U.S.C. §502. Thus, these courts commence their reasoning by stating that state law defines whether an obligation exists between the debtor and the creditor, i.e. whether the creditor has a claim against a particular debtor.  Thereafter, it must be determined pursuant to 11 U.S.C. §502(a) whether the claim as asserted is an "allowable" claim.  Section 502(b) delineates those instances under which the debtor may object to a claim.   Section 506 and Federal Rule of Bankruptcy Procedure 3012 are then employed to value the secured and unsecured portions of a secured creditors claim.   It is after this point that the courts opinions differ from the majority view.

    The few courts that argue a deficiency is permissible from a strict and literal reading of the statute reason that the hanging paragraph of Section 1325(a)(9), even though it clearly states that it applies to the whole of **paragraph 5 of Section 1325(a),** applies only in a 910 vehicle case when the debtor retains the vehicle under Section 1325(a)(5)(B), but it clearly does not apply to the situation where the debtor surrenders the vehicle under Section 1325(a)(5)©.  This interpretive jump is made by this line of cases without any support or justification for these courts momentary departure from their strict and literal reading of Section 1325 and its hanging paragraph.  The  minority simply ignores the plain meaning of the statute in its attempt to reach its position.  Thus, the minority position concludes that the court does not need to consider the issue of valuation of a secured claim, if the debtor exercises its right

---

[2] As to the case of <u>In re Duke</u>, 354 B.R. 806 (B.Ct.Kentucky 2006), adds little to this debate.  This court bases its entire ruling in favor of a deficiency claim on obscure legislative history, the same history that has been rejected by all of the other cases (both for and against) addressing this issue as it is unpersuasive for either side.

under 11 U.S.C. §1325(a)(5)©).

   The minority continues its discourse by finding that 506 is merely a device to value collateral which is property of the estate under 11 U.S.C. §1325(a)(5)(B), as said property is being retained by the debtor.  These courts find that upon the debtor's expression of intent to surrender the property automatically ceases to be property of the estate. Once the property is no longer property of the estate[3], the debtor loses all of his rights and protections under the United States Bankruptcy Code with regard to this creditor and is referred back to state law for a determination of the parties' rights. Surrender signifies both the debtor's consent to relief from the stay and **"the estoppel of the right to defend in any foreclosure proceeding or a prospective confession of judgment in any such case." In re Particka, 355 B.R. 616 (B.Ct.E.D.Michigan 2006)[4]. Particka carries this to its extraordinary conclusion that not only is the 910 creditor entitled to a deficiency claim, it is entitled to a unilaterally determined deficiency in the state court. This extraordinary conclusion not only strips the debtor of his constitutional right to defend against the deficiency in the state court, but also strips the United States Bankruptcy Court of any jurisdiction regarding the consideration of claims to be paid through the debtor's plan (a domain squarely within said jurisdiction prior thereto) in favor of a unfettered and unilateral determination to be made by the 910 claimant. [emphasis added].** Surely, it can not be seriously supported that such a result would be justified by a strict and literal reading of the "hanging paragraph".

   Without doubt the only legally sustainable conclusion in this instance is the conclusion reached by the **<u>vast</u>** majority of the Courts on this issue. It is urged therefore that this Court accept the majority view: ***<u>"the hanging paragraph prevents bifurcation of the secured creditors' claim upon</u>***

---

 [3] The <u>Particka</u> court's bold and legally unsupported determination that the mere surrender of a vehicle, without more, renders it no longer property of the estate under 541 of the Code is clearly contrary to the literal statement set forth in Section 541 regarding the definition of property of the estate and Section 362.

 [4]  It is interesting to note that this legal fete derives its genesis from the State of Michigan, one built on the rise and fall of General Motors, DaimlerChrysler and Ford Motor Company. However, the questionable nature of this decision is left for this Court's interpretation.

*surrender of collateral pursuant to §1325(a)(5)©).   Therefore, when a debtor surrenders collateral pursuant to §1325(a)(5)©), the creditor is not entitled to a deficiency claim.  Rather, surrender of the vehicle fully satisfies the debt."* **[emphasis added]**.  <u>In re Evans</u>, <u>supra</u>. at 501. **[emphasis added].**

        Furthermore, FORD's reliance on the minority view set forth in the case of <u>In re Zehrung</u>, <u>supra</u>. and <u>In re Particka</u>, <u>supra</u>. which find that a secured creditor's right to assert a deficiency claim in a bankruptcy case finds its sole genesis in state law which may not be abridged by any other section of the Code through the application of Section 502 of the Code and the claims filing process is unfortunately misplaced,  as these cases fail to properly interpret the significance or purpose of the claims filing process outlined in Section 501 and 502 of the Code.  <u>In re Zehrung</u>, 351 B.R. 675 (W.D. Wis.2006); <u>In re Particka</u>, 355 B.R. 616 (B.Ct.E.D.Mich. 2006).                    The claim filing process in a case under any chapter of The United States Bankruptcy Code serves to provide an opportunity for creditor involvement.  However, it does not define creditor status as a secured, priority or unsecured claim for purposes of treatment under a debtor's Chapter 13 Plan.  11 U.S.C. §§501, 502 and F.R.B.P. 3002 and 3004.  A review of these pertinent sections easily dispels the misguided reliance of Ford on same to define its right to a deficiency.

        Section 501 of the United States Bankruptcy Code (the "Code") provides, in relevant part:

**§501 Filing of proofs of claims or interests**

    (a)   A creditor ... may file a proof of claim....

    ©)   If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

Section 502 of the Code provides, in pertinent part:

    (a)   A claim ..., proof of which is filed under section 501 of this title, is deemed allowed.... unless a party in interest objects.

Section 502(b) [5] states that "if such objection to a claim is made, the court, after notice and a hearing, shall

---

    [5]    Section 502(b) cites certain exemptions to the rule, none of which are relevant in this case.

determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount."

Section 101 (5)(A) of the United States Bankruptcy Code defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." Under the Code, there are three (3) types of claims, to wit: secured claims, priority claims and general unsecured claims. Each type of claim receives specific treatment solely defined by the United States Bankruptcy Code. 11 U.S.C. §§506 (defines secured/ unsecured claims) and 507 (defines priority claims). It is these provisions that provide to the parties a definition of the type of claim said party holds in a bankruptcy proceeding, not state law. It is these provisions that set forth the mandates of classification to be applied by the Bankruptcy Judge when an interested party objects to the claim filed under Section 501 and deemed allowed by Section 502(a).[6]

Section 506(a)(1) specifically defines secured and unsecured claims and is entitled **"Determination of secured status."** The relevant portions of Section 506(a)(1) provide:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation of the proposed disposition or use of such property , and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Prior to the amendments to the United States Bankruptcy Code effective October 17, 2005, these provisions received near universal application by Bankruptcy Courts throughout the country in the determination of a secured creditors rights to payment through a debtor's Chapter 13 Plan. In re Pinti, 2007 WL 744031 (B.Ct. S.D.N.Y.). Thus, pursuant to 11 U.S.C. §506(a), in an instance where a Chapter 13 debtor opted to retain a secured creditor's collateral pursuant to 11 U.S.C. §1325(a)(5)(b),

---

[6] Neither Appellant's Brief nor any of the case law contrary to that cited by the debtor squarely disputes this and have failed to provide to this Court or any other any legal basis to dispute the application of these provisions as required by the Code.

said debtor was required to pay to said secured creditor a sum equal to the value of the collateral as a secured claim and to the extent that the amount due on the underlying note exceeded the value of the collateral a sum equal to that amount as a general unsecured claim.  The value of the collateral was determined by a valuation hearing before the United States Bankruptcy Court and depended upon the "replacement value" as defined by federal law, not state law, in the case of Commercial Corp. v. Rash, 520 U.S. 953, 117 S.Ct. 1879 (1997 ).

Additionally, pre-amendment law applied Section 506 of the Code to determine the secured claimant's claim amount and classification in cases where debtor's opted to surrender the secured collateral pursuant to 11 U.S.C. §1325(a)(5)©).  In re Kerwin, 996 F.2d 552 (2d Cir. 1993).  When the debtor exercised this option, the secured creditor obtained the collateral, sold it, and was then permitted to file a general unsecured claim in the debtor's Chapter 13 Case for a deficiency.  Id.  Once the deficiency claim was filed under 11 U.S.C. §501 it was deemed allowed unless the debtor filed a Motion Objecting to the claim pursuant to Federal Rule of Bankruptcy Procedure 3007.  Once the debtor filed the Motion Objecting to Claim, the issue of the amount of the deficiency was brought before the Bankruptcy Court, not before a State Court.  The basis employed by the bankruptcy court in deciding the issue was under the purview of Section 506 of the Code.[7]

In re Kerwin, supra., In re Nichols, 440 F.3d 850 (6th Cir. 2005); In re Osborn, 2007 WL 542435 (8th Cir. B.A.P. 2007); In re Nicely, 349 B.R. 600 (B.Ct.W.D.Missouri 2006); In re Pool, 351 B.R. 747 (B.Ct.D.Or. 2006); In re Ezel, 338 B.R. 330 (B.Ct.E.D.Tenn. 2006); In re Evans, 349 B.R. 498 (B.Ct.E.D. Michigan 2006); In re Osborn, 348 B.R. 500 (B.Ct.W.D.Mo. 2006); In re Sparks, 346 B.R. 767 (B.Ct.S.D.Ohio 2006); In re Press, 2006 WL 2734335 (B.Ct. S.D.Fla. 2006); In re Brown, 346 B.R. 868 (B.Ct.N.D.Fla. 2006); In re Payne, 347 B.R. 278 (B.Ct.S.D.Ohio 2006); In re Lowder, 2006

---

[7] Under the pre-amendment law, each of the secured creditors, including the Internal Revenue Service, received the same treatment under 11 U.S.C. §506, unless otherwise specifically dictated by the United States Bankruptcy, for example the treatment received by  purchase money first mortgage liens upon the debtor's real property due to the existence of a special provision relating to the treatment of such a secured claim in section 11 U.S.C. §1322. (See Nobleman v. American Sav., 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 288 (1993), 11 U.S.C. §1322(b)(2)).

14

WL 1794737 (B.Ct.D.Kan 2006); In re Vega, 344 B.R. 616 (B.Ct.D.Kan 2006); In re Quick, 2007

W.L. 269808 (B.Ct. N.D. Okla. 2007); In re Moon, 359 B.R. 329 (B.Ct.N.D.Ala. 2007); In re Durham,

2006 WL 4058354 (B.Ct.D.Utah 2006); In re Gentry, 2006 WL 3392947 (B.Ct.E.D.Tenn. 2006); In

re Turkowitch, 355 B.R. 120 (B.Ct.W.D.Wisc. 2006); In re Fedderson, 355 B.R. 738 (B.Ct.S.D.Ill

2006); In re Maggett, 2006 WL 3478991 (B.Ct. D.Nebraska 2006).

Upon the enactment of the amendments to Section 1325 and Section 506, the pre-

amendment law regarding the filing of claims for deficiencies changed for certain creditors, amongst them

was the 910 Vehicle claimant. 11 U.S.C. §1325 and 11 U.S.C. §506, as amended. As is succinctly noted

by the Southern District of New York Bankruptcy Court (and the majority opinion on this issue):

> By its terms, the Hanging Paragraph applies whether the debtor elects to retain the collateral under Section 1325(a)(5)(B) or surrender it under Section 1325(a)(5)©). Thus, the "Anti Cramdown" when applied to Section 1325(a)(5)©) because as the majority of cases have held, it prevents bifurcation fo the secured claim for purposes of assessing the unsecured portion of the claim. The Hanging Paragraph functions the same way when applied to Section 1325(a)(5)©) as it does in Section 1325(a)(5)(B); only the result is different. Whereas the Hanging Paragraph prevents bifurcation, and thus cramdown under Section 1325(a)(5)(B), it prevents bifurcation and the resulting deficiency under Section 1325(a)(5)©).

In re Pinti, supra.

Thus, as Ford has received the benefit of the amendment, to wit: a valuation of its vehicle

without judicial interference at the full amount due on the underlying note regardless of the actual value of

the vehicle, so to must Ford accept this valuation should the debtor opt to surrender this vehicle with its

non-judicially predetermined value. Id. [8]

In applying the sections to this case at bar, it is easy to see how the Appellant fails to

---

[8]    Interesting to note, neither Ford nor the automobile industry is complaining or engaging in discourse regarding the fact that certain constitutional provisions or state law provisions may be violated by Congress awarding to it far greater protection than many other similarly situated secured creditors, for example the junior mortgage holders whose loan was obtained with in 910 days of the filing of the debtor's Chapter 13 petition who are still relegated to the valuation process of 11 U.S.C. §506 without regard for said claimant's state law rights. (See: In re Pond, 252 F.3d 122 (2d Cir. 2001).

correctly interpret same. First, in order to be considered in the plan payment process in a Chapter 13 Bankruptcy, FORD was required to file a Proof of Claim. Upon the filing of FORD'S claim, the application of Section 502 of the Code provides that the claim as filed is "deemed allowed" (that is the debtor must pay same) unless a party objects to the claim under the Federal Rules of Bankruptcy Procedure. In determining whether or not a party is a creditor, a debt due and owing from the debtor must exist under state law. Id. Accordingly, the existence of the debt under state law, through the application of Section 502 of the Code, gets FORD an invitation to the dinner party, however, thereafter, it is Section 1325 and 506 of the Code that determines what FORD gets to eat at the dinner party. Once in the bankruptcy system, the claimant becomes subject to and bound by the federal law as set forth in the United States Bankruptcy Code and it is not permitted to opt out and employ state law each time that said claimant finds the application of the federal law not to be as beneficial as said claimant would like it to be. Id. (See the Supremacy Clause of the United States Constitution).

The Appellant's misguided assertion that a creditor's right to file a deficiency stems solely from his state court rights embodied in the Code through the application of 11 U.S.C. §502 of the Code, not only defies logic but clearly finds no support in the case cited for the proposition, to wit: In re Kerwin, 996 F.2d 552 (2nd Cir. 1993). It is patently clear from even the briefest review of this pre-amendment case that FORD'S assertion that this case explicitly prohibits the majority's interpretation and application of the amended sections at issue herein serves simply to highlight FORD'S desperate desire to manipulate the interpretation of the current law in an effort to rectify the automobile financing companies' failure to fully convince Congress to provide to it not only the cake, but the fork with which to eat it. (Appellant's Brief, pp 11-15).

Clearly as eloquently stated by the Bankruptcy Court in the instant case, the cases upon which FORD relies, In re Zehrung, supra. and In re Particka, supra.:

> overlook the fact that secured claims are defined by the Bankruptcy Code in Section 506, but Congress has declared that definition inapplicable to certain types of claims for the purpose of their treatment in a Chapter 13 plan... Congress created the definition of 'secured claim' in Section 506 and is free to expand or limit the definition and its application ans done so with the hanging Paragraph. Thus, 'State law may control the requirements for creating and perfecting a lien,

16

but it is the purview of the Bankruptcy Code to both recognize the lien and provide for its treatment....[9] '

In re Pinti, supra. at 5.

Moreover, FORD's assertion that its argument is fully supported by the holding of the United States Supreme Court in Butner v. United States, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) and Nobleman v. American Sav., supra., wherein the Court held that the "determination of property rights in the assets of a bankruptcy's estate" is left to state law, does not change the result so clearly adopted by the majority view. The rulings in these cases effortlessly confirm the long standing legal maxim set forth above: that it is state law that creates the debt and it is state law that is employed by the creditor which enables it to file a claim in a particular bankruptcy case, but it is bankruptcy law that classifies the claim and determines the type of treatment that the claim will receive in a debtor's bankruptcy case. Id.[10]

Accordingly, the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division did not err in its interpretation and application of the amended provisions in Section 1325 and 506 of the United States Bankruptcy Code.

## POINT II

### THE FINDING THAT FORD IS NOT ENTITLED TO A DEFICIENCY CLAIM WHEN A 910 VEHICLE IS SURRENDERED TO IT UNDER CHAPTER 13 OF THE CODE DOES NOT VIOLATE THE TAKINGS CLAUSE IN THE FIFTH AMENDMENT

FORD'S argument that the Bankruptcy Court's ruling in the instant case arises to an

---

[9]    It should be noted that Section 1325, as amended, serves only to exempt the 910 Vehicle claim from the valuation of the collateral process for determining the extent to which the creditor is secured under 11 U.S.C. §506, but it does not exempt the secured creditor from further application of Section 506 to its claim under Section 506, to wit: the determination to be made under Federal Law by the United States Bankruptcy Court as to whether the secured creditor has a claim for a deficiency in the debtor's bankruptcy case. Accordingly, Section 1325, as amended, merely establishes, for purposes of 506, the method by which the 910 vehicle will be valued.

[10]    In Nobleman the Supreme Court was requested to rule upon the issue of whether a first mortgage on a debtor's residence could be bifurcated into its secured and unsecured portions. In deciding the issue, the Supreme Court resorted to the application of 11 U.S.C. §506 and 1322(b)(2), not the state law rights of the mortgage holder to define the secured status of the claim.

17

impermissible Taking under the Fifth Amendment Clause of the United States Constitution is wholly without merit. <u>Penn Central Transportation Co. v. New York City</u>, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); <u>Prune Yard Shopping Center v. Robins</u>, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); <u>United States v. Security Industrial Bank</u>, 459 U.S. 70, 103 S.Ct. 407 (1982); <u>In re Nichols</u>, 440 F.3d 850(6th Cir. 2005); <u>Hanover Nat'l Bank v. Moyses, 186 U.S.</u> 181, 22 S.Ct. 857, 46 L.Ed. 113 (1902).

   The Fifth Amendment of the United States Constitution provides in relevant part: "nor shall private property be taken for public use, without just compensation (referred to as the "Takings Clause".)
 In order to find that a violation of the Takings Clause has occurred, the party asserting same must demonstrate the following to the Court:

   1. The existence of a private property right;

   2. A governmental taking of the private property right;

   3. For public use; and

   4. Without just compensation.

> The Supreme Court has recognized, as did the common law, that the secured creditor has two types of rights: the contractual right to obtain repayment of its debt with a fair rate of return in the form of interest payments and the property right the creditor has in the collateral that secures the debt. These two types of rights together constitute the 'bundle of rights' held by the secured creditor. Bankruptcy laws have long been construed to authorize the impairment of contractual obligations. The power of the bankruptcy laws, however, is subject to the Fifth Amendment's prohibition against taking property without just compensation. This distinction creates the also long-recognized tension between permitting the impairment of contractual obligations while maintaining the integrity of the property rights.

<u>In re Nichols</u>, <u>supra</u>. at 854. (See also: <u>Security Indus. Bank</u>, <u>supra</u>.). Thus, it is the lien right in the collateral that the federal law recognizes as a "property right" requiring protection under the Takings Clause, not the contractual right to a deficiency, which has been reiterated in Article 9 of the N.Y.S. Uniform Commercial Code. <u>Id</u>.

   Perhaps this rule is best elaborated upon in the case of <u>Armstrong v. United States</u>, 364

18

U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). In this case, subcontractors delivered to the contractor certain ship parts to be used in construction of ships for the United States Navy. In an effort to protect its right to payment, the subcontractors perfected liens in the vessels, as provided under state law. Thereafter, the contractor defaulted on the contract and the United States took possession of the vessels. In taking possession of the vessels, the subcontractor's were entirely stripped of their right to foreclose on their liens. The Supreme Court, in considering whether the United States possession was an impermissible taking under the Takings Clause, held: "this action constituted a taking due to the 'total destruction' by the United States of all value in the liens. The Court found the liens (not the contractual rights held by the subcontractors) to be compensable personal property susceptible to a taking and not a 'mere consequential incidence' of a valid regulatory measure. Id. at 48, 80 S.Ct. 1563. The Court concluded its ruling by finding that while it is constitutionally acceptable for the bankruptcy laws to allow interference with contractual arrangements which result in some diminution of property rights, the interference may not go so far that it constitutes a 'total destruction' of the value in the property (the lien) held by a creditor. Should this occur, the bankruptcy law would be found to have accomplished a Taking under the Fifth Amendment and compensation to the creditor would be required. Id. (See also: Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Prune Yard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); United States v. Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407 (1982); In re Nichols, 440 F.3d 850 (6th Cir. 2005)).

      Accordingly, the Bankruptcy Court's finding that the secured creditor's contract right, reiterated in Article 9 of the Uniform Commercial Code, is merely a contractual right not subject to the application of the Takings Clause of the Fifth Amendment is deeply rooted in Constitutional Law of the United States. Id. The fact that FORD cites only one case to support its constitutional argument, which is wholly inapposite to the issues presented herein, provides to this Court further evidence that the Fifth Amendment finds no place in this analysis.

      Furthermore, the cases cited by the parties in the amicus brief also fail to support the Fifth Amendment Taking argument. The fact, assuming arguendo, that New York State Law defines contract

19

rights as property rights for purposes of New York Law, as cited in the amicus brief, does nothing to change the constitutional inquiry to be made by this Court.   Surely if Federal Law and New York State Law are in conflict on this point, the Supremacy Clause of the United States Constitution provides that federal law is preemptive.

Moreover, Section 506 and Section 1325 of the Code are not the only sections that substantially change the state law rights of parties, once they are placed within the federal bankruptcy system.  The Code, as well as many Federal Regulatory Schemes, are littered with examples where the law substantially changes the state law rights of parties, for example:

I.  Section 365 effecting the state law rights of lessors to change claims in Chapter 11 Cases;

ii.  Section 524 discharging the unsecured creditor's rights to payment in the entirety (referred to as "the general discharge provision of the Code") in direct contravention of these creditors' state law right to collection of the monies loaned;

iii.  Section 1126 of the Code which provides for the acceptance of a Chapter 11 plan by a two thirds majority of impaired classes of creditors effectively binding the rights of both non-voting and dissenting creditors without any consideration of their state law rights;

iv.  Section 522(f) providing that certain non-consensual liens may be avoided if those liens effect the debtor's rights to his or her exemption in said property regardless of those creditor's state law rights; and

v.   Section 506 of the Code which continues to permit a debtor to void security interests of several categories of undersecured creditors without any regard for their property right in their liens, as such is not a total taking of the right.

Should this Court accept the Fifth Amendment argument asserted by the parties herein, this Court in effect would be required to find that the above referenced provisions of the  United States Bankruptcy Law violate this constitutional law.

Accordingly, the determination made by the United States Bankruptcy Court, that Section

1325, as amended, does not violate the Taking Clause of the Fifth Amendment is an accurate and just reading of the statute.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should reaffirm the Decision entered on March 13, 2007 by the United States Bankruptcy Court, Southern District of New York, Poughkeepsie Division; and grant to the debtor such other and further relief as this Court deems proper.

Dated:  Wappingers Falls, New York
        May 7, 2007


                                GENOVA & MALIN
                                Attorneys for Debtor/Appellee

                        By:    /s/ Andrea B. Malin
                               ANDREA B. MALIN (AM4464)
                               Hampton Business Center
                               1136 Route 9
                               Wappingers Falls, NY 12590
                               (845) 298-1600

22